## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STAR K.E., LLC, | : |
| Plaintiffs, | : Civil Action No.:    2:25-1317 |
| v. | : |
| RSUI INDEMNITY COMPANY, MCGOWAN & COMPANY, INC. d/b/a MCGOWAN PROGRAM ADMINSTRATORS, and RISK PLACEMENT SERVICES, INC. | : |
| Defendants. | : |

## COMPLAINT

The Plaintiff, Star K.E., LLC, by and through its undersigned counsel, Silko & Associates, P.C., files the following Complaint in accordance with the Federal Rules of Civil Procedure, asserting in support thereof as follows:

## PARTIES

1.    Plaintiff, Star K.E., LLC (hereinafter "Star K.E."), is a Pennsylvania Domestic Limited Liability Company with a registered business address of 221 Elmhurst Circle, Cranberry Township, Pennsylvania 16066.

2.    Defendant, RSUI Indemnity Company (hereinafter "RSUI"), is a Domestic Insurance Company organized and existing under the laws of New Hampshire with a principal place of business located at 945 East Paces Ferry Road, Suite 1800, Atlanta, Georgia 30326.

3.    Defendant, McGowan and Company, Inc. d/b/a McGowan Program Administrators ("hereinafter MPA"), is an Ohio domestic corporation with its corporate mailing address and physical principal place of business located at 20595 Lorain Road, Fairview Park, Ohio.

4.     MPA holds itself out as a program administrator, managing general underwriter, managing general agent, and a specialized, wholesale, insurance brokerage.

5.     Defendant Risk Placement Services, Inc. (hereinafter "RPS"), is an Illinois corporation with a principal place of business located at 2850 Golf Road, Rolling Meadows, Illinois 60008.

6.     RPS holds itself out as a leading managing general agent and underwriting manager focused on providing wholesale insurance coverage.

## JURISDICTION AND VENUE

7.     Subject matter jurisdiction is founded upon 28 U.S.C. §1332, since there exists complete diversity of citizenship between the parties, and since the amount in controversy exceeds $75,000.

8.     Venue is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

9.     At all times relevant hereto, Star K.E. owned and operated a franchised McDonald's-brand restaurant located at 6526 US-22, Delmont, PA 15625, Pennsylvania (hereinafter the "Restaurant").

10.     Kasie McMunn (hereinafter "McMunn"), a female former employee of Star K.E. who worked at the Restaurant, has filed two separate employment lawsuits against Star K.E., as well as McDonald's Corporation and McDonald's USA, LLC (hereinafter collectively the "McDonald's Defendants"), in the Court of Common Pleas of Westmorland County, Pennsylvania at Case No. 1934 of 2024 (hereinafter the "State Court Action") and in the United States District Court for the Western District of Pennsylvania at Case No. 2:25-cv-152 (hereinafter the "Federal

Court Action"), both of which arise out of the same set of alleged facts and circumstances surrounding McMunn's employment at the Restaurant.

## The Underlying Actions

### State Court Action

11.    McMunn, by and through her mother and natural guardian, J.T., filed the State Court Action against Star K.E. and the McDonald's Defendants on or about May 13, 2024. McMunn, who is now an adult, was a minor at the time the State Court Action was filed. A true and correct copy of the Complaint filed in the State Court Action (hereinafter the "State Complaint") is attached hereto as Exhibit "A."

12.    In her State Complaint, McMunn alleges that, in March 2022, when she was just fifteen (15) years old, she began working at the subject McDonald's Restaurant. *See*, Exhibit "A," State Complaint at ¶ 25.

13.    It is alleged that, throughout her employment, McMunn was not trained or instructed on how to report incidents of sexual harassment, was not told to whom these reports should be directed, was not given, taught, or shown any policy regarding sexual harassment, was not educated about the signs of sexual harassment, and was not provided any information regarding Human Resources with Star K.E. or the McDonald's Corporate Defendants. *Id.* at ¶ 29.

14.    McMunn alleges that, shortly after she began working at McDonald's, a new manager, Dezhane Amey (hereinafter "Amey"), believed to be twenty-two (22) or twenty-three (23) years old at the time, was hired and was training to become a General Manager. *Id.* at ¶ 30.

15. It is alleged that, unbeknownst to McMunn and other employees at the Restaurant, Amey had an extensive criminal history prior to beginning his employment with McDonald's, allegedly including several charges of physical harassment, drug use, and unwarranted physical contact, and that Amey had pled guilty to these charges prior to being hired by McDonald's. *Id.* at ¶ 31.

16. McMunn alleges that Amey, as a manager, had access to the Restaurant's employee files, and was responsible for scheduling employee shifts. *Id.* at ¶ 32.

17. It is alleged that, after Amey was hired, he began manipulating 15-year-old McMunn, which ultimately resulted in an illegal sexual relationship that continued for the next several months. *Id.* at ¶ 33.

18. McMunn alleges that, at the beginning of the relationship, Amey would supply McMunn with marijuana and vape pens to garner good favor, which Amey ultimately used to further pursue McMunn. *Id.* at ¶ 34.

19. It is alleged that Amey and McMunn began to have sexual relations, often in the McDonald's bathroom while on duty, and that, other times, they would leave the store and go to Amey's car. *Id.* at ¶ 35.

20. It is alleged that Amey would manipulate McMunn's timeclock to ensure she was still "on the clock" during these times. *Id.*

21. It is further alleged that Amey, who was responsible for scheduling shifts of store employees, coordinated his shift with McMunn so that he was able to conceal the relationship from McMunn's family and friends, as well as McDonald's management, which often caused McMunn to work excessively long hours and double shifts without any days off during the week. *Id.* at ¶ 36.

22.    McMunn alleges that Amey continued to take advantage of her using his superior position as a manager and manipulated her into continuing sexual relations with him, despite her desire to end the relationship, including making verbal threats regarding McMunn's employment and verbally harassing McMunn. *Id.* at ¶¶ 37-38.

23.    It is alleged that Amey's conduct was noticed by other employees at the Restaurant who were compelled to report the alleged ongoing hostility and abuse, including a report by one of the employees in September 2022 to a corporate supervisor named Shamel (spelling and last name unknown) who had joined the Restaurant to assist in its operations. *Id.* at ¶¶ 39-41.

24.    McMunn alleges that, shortly after the report to Shamel, a woman named CiCi (spelling and last name unknown), a human resources manager for McDonald's, became involved, and spoke with McMunn to gather information about the alleged sexual harassment, manipulation and abuse. *Id.* at ¶ 42.

25.    It is alleged that, despite this report and McDonald's Corporate Human Resources being involved, no other investigative action was taken, and Amey continued to work at the Restaurant with McMunn. *Id.* at ¶ 43.

26.    It is further alleged that Amey discovered that a report regarding his relationship with McMunn had been made, and that he threatened McMunn and her family which allegedly prompted McMunn to renege on her statement to CiCi. *Id.* at ¶ 44.

27.    McMunn alleges that Amey continued to manipulate and sexually harass her despite her unwillingness to continue such a relationship. *Id.* at ¶ 45.

28.    McMunn alleges that Amey would indicate that he had the power to get McMunn fired or significantly reduce her working hours, and that Amey made threats of physical violence toward McMunn should she report the relationship. *Id.* at ¶ 46.

29.     It is alleged that Amey's alleged sexual harassment, manipulation and abuse of McMunn was reported two additional times and that, rather than investigating and attempting to remedy the situation, McMunn was scolded and told that she was no longer allowed to return to work, while Amey continued to be employed. *Id.* at ¶¶ 47, 48, 53, 54, 58-60.

30.     It is further alleged that the alleged harassment, manipulation and sexual abuse experienced by McMunn, and the alleged knowledge and awareness of the alleged sexual harassment and abuse by the Defendants, contributed to and created a hostile work environment at the Restaurant. *Id.* at ¶ 55.

31.     McMunn alleges that a reasonable person would perceive such constant and open harassment of minor-female employees as creating an employment environment that was intimidating, hostile, and/or offensive toward women and that such work environment at the Restaurant at issue was permeated with sexual harassment so severe and/or pervasive as to make the Restaurant an objectively abusive and hostile workplace for women. *Id.* at ¶¶ 56-57.

32.     McMunn alleges that, following a report made to the Kiski State Police, the Kiski State Police continued to investigate the allegations, which included an extensive review of text messages and Snapchat data between McMunn and Amey, and ultimately charged Amey with statutory sexual assault, unlawful contact with a minor, corruption of a minor, and indecent assault of a person under 16 years of age. *Id.* at ¶ 61.

33.     It is alleged that, only after the Westmoreland County District Attorney's office brought charges against Amey, did McDonald's terminate his employment. *Id.* at ¶ 62.

34.    The claims against Star K.E. and the McDonald's Defendants in the State Court Action are for Employment Practices Wrongful Acts including, *inter alia*, failing to adequately train McMunn on how to identify, address, and report incidents of sexual harassment, sexual assault and/or battery and a sexually hostile work environment, failing to adequately perform screening and/or background checks on Amey prior to his hiring, failing to adequately supervise Amey, thereby ensuring that he had unrestricted access to McMunn, failing to discipline Amey after several reports of his indecent conduct by McMunn and others, continuing to employee Amey and allowing him to supervise and have unrestricted access to McMunn when the Defendants allegedly had information of his prior criminal acts, failing to properly address and investigate McMunn's, her mother's and other employees' complaints of alleged harassment and abuse, continuing to allow Amey to work with McMunn after reports of manipulation, harassment, and sexual abuse were known by the Defendants and failing to publish and distribute, or otherwise make known, policies and procedures on sexual harassment and reporting thereof. *Id.* at ¶ 80.

## Federal Court Action

35.    On or about January 31, 2025, McMunn filed the Federal Court Action against Star K.E. and the McDonald's Defendants.    The Complaint filed in the Federal Court Action (hereinafter the "Federal Complaint") contained allegations that were substantially similar to those in the State Complaint in the State Court Action.  A true and correct copy of the Federal Complaint is attached hereto as Exhibit "B."

36.    In her Federal Complaint, McMunn alleges that she began her employment with Star K.E. in or about March 2022 at the subject McDonald's Restaurant. *See*, Exhibit "B," Federal Complaint at ¶ 23.

37.    McMunn alleges that, throughout her employment at the Restaurant, there was no training on sexual harassment in the workplace. *Id.* at ¶ 24.

38.    McMunn alleges that, shortly after she began working at the Restaurant, Amey, believed to be twenty-two (22) or twenty-three (23) years old at that time, was hired as McMunn's lead manager, and that no background search was performed by any of the Defendants on Amey at the time that he was hired. *Id.* at ¶ 26.

39.    It is alleged that, unbeknownst to McMunn and other employees at the Restaurant, Amey had an extensive criminal history prior to beginning his employment with McDonald's, which included several charges of physical harassment, drug use and unwarranted physical contact, and that Amey had plead guilty to these charges prior to being hired by the Defendants. *Id.* at ¶ 27.

40.    It is further alleged that, Amey, as manager, had access to the Restaurant's employee files, and was responsible for scheduling employee shifts, and that, throughout McMunn's employment, Amey would text message and/or call McMunn to come into work when she was not previously scheduled to work, and would require McMunn to work off the clock. *Id.* at ¶ 28.

41.    McMunn alleges that, after Amey was hired, he began to manipulate McMunn, who was fifteen (15) years old at that time, which ultimately resulted in an illegal sexual relationship on Star K.E.'s property. *Id.* at ¶ 29.

42.    It is alleged that Amey would supply McMunn with marijuana and vape pens to garner good favor with McMunn, which Amey ultimately used to further sexually pursue McMunn when she was a minor. *Id.* at ¶ 30.

43.    McMunn alleges that, in or about June 2022, Amey initiated an improper sexual relationship with McMunn, and that McMunn was fifteen (15) and sixteen (16) years old during this inappropriate sexual relationship, which allegedly occurred on Star K.E.'s property for several months. *Id.* at ¶ 31.

44.    It is alleged that Amey manipulated McMunn's time cards to ensure that she was "on the clock" while Amey and McMunn had sexual relations on Star K.E.'s property, and that Amey manipulated McMunn's time cards and took advantage of McMunn's age in order to have sex with McMunn. *Id.* at ¶¶ 32-33.

45.    It is further alleged that Amey, who was responsible for scheduling shifts of store employees, coordinated his shift with McMunn's shifts so that he was able to conceal his relationship with McMunn from her family and friends, as well as McDonald's management, which often caused McMunn to work excessively long hours and double shifts without any days off during the week. *Id.* at ¶¶ 34-35.

46.    McMunn alleges that Amey would regularly make verbal threats regarding McMunn's employment and verbally harass McMunn, and that Amey continued to take advantage of McMunn using his superior position as a manager and manipulated McMunn into continuing sexual relations with him despite her desire to end the relationship. *Id.* at ¶¶ 36-37.

47.    It is alleged that Amey's conduct was noticed by other employees at the Restaurant who were compelled to report the alleged ongoing hostility and abuse of McMunn by Amey to the Defendants, with the first report occurring in September 2022 when the Defendants' Human Resources Supervisor, Charlotte Coleman (hereinafter "Coleman"), was notified of the alleged sexual harassment, hostility and abuse by Amey toward McMunn and of the sexual relationship between McMunn and Amey. *Id.* at ¶¶ 38-39.

48. It is alleged that, following the first report in September 2022, Amey was notified of the report, and he was not disciplined by the Defendants for his alleged conduct. *Id.* at ¶ 40.

49. It is further alleged that, in response to being notified of the September 2022 report regarding his alleged conduct, Amey threatened McMunn and her family, which prompted McMunn to recant her statements to Coleman. *Id.* at ¶¶ 41-42.

50. McMunn alleges that, thereafter, she was forced to continue to work with Amey while Amey allegedly continued to manipulate and sexually harass McMunn, despite McMunn's unwillingness to continue the relationship with Amey. *Id.* at ¶¶ 43-44.

51. Specifically, it is alleged that Amey would indicate that he had the power to have McMunn fired, or significantly reduce her working hours, and that he made threats of physical violence toward McMunn should she report the relationship. *Id.* at ¶ 45.

52. McMunn alleges that, in November 2022, she reported the alleged sexual relationship, sexual harassment, manipulation and abuse by Amey to the Defendants' Human Resources and that, in response, Coleman scolded McMunn for her report and told McMunn that she was "ruining Amey's career." *Id.* at ¶¶ 46-47.

53. McMunn alleges that she was suspended until the investigation was closed, and that she was sent home by Coleman crying. *Id.* at ¶ 48.

54. McMunn alleges that she believes that she was suspended in retaliation for her complaints to the Defendants of the alleged sexual relationship, sexually hostile work environment, manipulation and abuse by Amey, and that Amey, a male employee, was not suspended by the Defendants pending the investigation. *Id.* at ¶¶ 49-50.

55.     It is alleged that, on or about December 19, 2022, McMunn's mother reported the alleged manipulation and illegal sexual relationship between Amey and McMunn to the Kiski State Police, and that McMunn's mother and McMunn also made a third report to Coleman regarding Amey's alleged improper manipulation in or about December 2022. *Id.* at ¶¶ 54-55.

56.     McMunn alleges that, despite three separate reports to the Defendants of Amey's alleged manipulation and sexual harassment of McMunn, no other investigation was taken, and that the Defendants continued to employ Amey as a store manager. *Id.* at ¶¶ 56-57.

57.     It is alleged that the alleged harassment, manipulation and sexual abuse experienced by McMunn, and the alleged knowledge and awareness of the sexual harassment and abuse by the Defendants, contributed to and created a sexually hostile work environment. *Id.* at ¶ 58.

58.     It is further alleged that a reasonable person would perceive such constant and open sexual harassment of a minor female employee as creating a hostile work environment and an employment environment that was intimidating, hostile and/or offensive toward women. *Id.* at ¶ 59.

59.     McMunn alleges that the Defendants' Human Resources requested that McMunn return to work, but that the Defendants had not terminated Amey from his employment. *Id.* at ¶ 63.

60.     It is alleged that, as a result of the sexually hostile work environment, McMunn was constructively discharged from her employment with the Defendants in or about December 2022. *Id.* at ¶ 64.

61.    It is alleged that, on February 1, 2024, the Westmoreland County District Attorney's Office charged Amey with statutory sexual assault, unlawful contact with a minor, corruption of a minor and indecent assault of a person under sixteen (16) years of age for his alleged conduct with McMunn. *Id.* at ¶ 65.

62.    McMunn alleges that, despite credible complaints by McMunn, her co-workers and her mother regarding Amey's alleged illegal conduct, Amey was not terminated until he was caught stealing from Star K.E. in or about July 2023. *Id.* at ¶ 66.

63.    It is alleged that the Defendants knew about the harassment of McMunn and were aware of the sexually hostile work environment created by Amey, but that the Defendants took no action to discipline Amey or otherwise prevent the harassment. *Id.* at ¶ 67.

64.    It is further alleged that the actions on the part of the Defendants are part of a plan, pattern or practice of sexually harassing and/or discriminating against female employees in the type and manner described in the Federal Complaint which may affect others similarly situated to McMunn. *Id.* at ¶ 69.

65.    In the Federal Complaint, McMunn raised Employment Practices Claims against Star K.E. and the McDonald's Defendants for sexual (gender) discrimination, sexual harassment, sexually hostile work environment, retaliation and violations of the Pennsylvania Human Relations Act. *Id.* at ¶¶ 70-59[1] (pp. 10-17).

### Insurance Procurement

66.    As a McDonald's franchisee, Vea Cheng of Star K.E. was presented with a list of approved retail insurance brokers to choose from to act as Star K.E.'s broker for the purpose of procuring various types of insurance for Star K.E.

---

[1] McMunn misnumbered the Paragraphs in the Federal Complaint.

67.    Star K.E. selected MPA from the approved list of retail brokers as Star K.E.'s retail broker for the 2022-2023 policy year, and Arthur J. Gallagher & Co. as Star K.E.'s retail broker for the 2023-2024 policy year.

68.    For multiple years leading up to and including the 2023-2024 policy year, each of the approved retail insurance brokers presented Star K.E., and presumably the other McDonald's franchisees, with insurance package proposals that included only one option for Employment Practices Liability Insurance (EPLI) coverage, which was a Directors and Officers (D&O) liability policy with Employment Practices Liability Insurance (EPLI) coverage issued by RSUI under what was titled the McDonald's Owner/Operators D&O/EPL/FID Program ("McDonald's Program").

69.    Star K.E. obtained Directors and Officers (D&O) liability policies with Employment Practices Liability Insurance (EPLI) coverage from RSUI as part of the McDonald's Program for multiple policy years.

70.    Relevant to this matter, RSUI issued a renewal policy to Star K.E. effective March 1, 2021 through March 2, 2022 with a Policy Number of NHP691667-1000030951 (hereinafter "2021-2022 D&O/EPLI Policy"), a renewal policy effective March 1, 2022 through March 2, 2023 with a Policy Number of NHP698049-1000030951 (hereinafter "2022-2023 D&O/EPLI Policy") and a renewal policy effective March 1, 2023 through March 2, 2024 with a Policy Number of NHP703744-1000030951 (hereinafter "2023-2024 D&O/EPLI Policy").

71.    Upon information and belief, RPS and MPA had special roles in the process of the procurement of the above-referenced insurance policies that were issued to Star K.E. by RSUI as part of the McDonald's Program.

72.     At all relevant times hereto, Star K.E. was insured under the 2023-2024 D&O/EPLI Policy. A true and correct copy of the 2023-2024 D&O/EPLI Policy is attached hereto as Exhibit "C."

### RSUI'S Repeated Denial of Coverage for the McMunn Claim

73.     McMunn filed the State Court Action against Star K.E. and the McDonald's Defendants on or about May 13, 2024.

74.     Star K.E. submitted the State Court Action to RSUI for coverage upon receipt of the State Complaint.

75.     By letter to Vea Cheng of Star K.E. dated July 10, 2024, RSUI denied coverage for the State Court Action (hereinafter "First Denial of the McMunn Claim"). A true and correct copy of RSUI's First Denial of the McMunn Claim is attached hereto as Exhibit "D."

76.     Upon information and belief, RSUI performed no investigation before issuing the denial.

77.     In its First Denial of the McMunn Claim, RSUI provided the following grounds for denying the McMunn Claim:

> Plaintiff, K.M., a minor, by and through her parent and natural guardian, K.M. ("K.M.") filed a complaint dated May 5, 2024, against Star K.E. LLC, d/b/a McDonald's ("Star K.E"), McDonald's USA, LLC ("McDonald's USA"), and McDonald's Corporation, asserting a singular cause of action for negligence (the "Complaint"). K.M., a former crew member at the McDonald's located at 6526 US-22, Delmont, PA 15625, alleges that after Dezhane Amey, who was approximately 22 or 23 years old at the time, was hired as a manager, he began manipulating her which ultimately resulted in a sexual relationship that continued for several months. K.M. and Amey allegedly had sexual relations in the McDonald's bathroom while on duty, as well as in Amey's car. She alleges that in order to continue the sexual relations, Amey would coordinate his shifts with her and would harass and threaten her. K.M. alleges that other employees noticed Amey's conduct and that in September 2022, one of the employees reported Amey's conduct to a corporate supervisor. K.M. claims that a [sic] result of this complaint, a human resources manager spoke with K.M. regarding the alleged sexual

harassment manipulation and abuse, but then took no corrective action. K.M. further contends that when a second report was made in November 2022, she was confronted by the human resources manager and advised not to return to work. According to K.M., her mother learned of the alleged sexual misconduct and also reached out to the human resources manager, who advised her that the situation was being investigated internally. K.M. and her mother allege that they then reported the manipulation and illegal sexual relationship to the police. According to the complaint, following an investigation, Amey was charged with statutory sexual assault, unlawful contact with a minor, corruption of a minor, and indecent assault of a person under sixteen years of age, which resulted in Amey's termination from McDonald's.

K.M. alleges that she was subjected to a hostile work environment and that the defendants knew of Amey's conduct but took no disciplinary actions against Amey or prevented the harassment. K.M. asserts that she was harmed by the defendants' negligence including, but not limited to, their failure to adequately train her on how to identify, address, and report incidents of sexual harassment, sexual assault and/or battery, their failure to adequately perform screening and/or background checks on Amey, and their failure to adequately supervise and/or discipline Amey. K.M. seeks non-economic damages including, but not limited to, emotional distress, harm to reputation, and embarrassment, as well as economic damages based on past and future earning capacity.

...

Having reviewed the K.M. Matter under the terms and conditions of the Policy, coverage is not available for the reasons set forth below. We first direct your attention to Insuring Agreement I.C., the only potentially applicable one, which provides as follows:

> [The **Insurer** agrees] C. With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

The Policy defines **Claim** at Section III.C.2. to include a civil proceeding for monetary or non-monetary relief commenced by receipt or service of a complaint or similar pleading.

The **Claim** is made against Star K.E., which we understand operated the McDonald's located at 6526 US-22, Delmont, PA 15625, which was previously owned by NVACB during the relevant time periods. The Policy defines **Insured** at Section III.I. as "any **Insured Organization** and/or any

**Insured Person.**" **Insured Organization** is defined at Section III.J. as the organization listed in Item 1.B. of the Policy's Declarations, which is NVACB, and any **Subsidiary** or **Affiliate** of NVACB. Because Star K.E. operated NVACB's McDonald's store during the relevant time periods, it qualifies as an **Affiliate** of NVACB, and the K.M. Matter is therefore a **Claim** made against an **Insured Organization**. Please be advised that McDonald's USA and McDonald's Corporation are not **Insured Organizations** under the Policy and therefore would not be entitled to coverage under the Policy under any circumstances.

We next direct your attention to Section IV.15. of the Policy, which states that RSUI shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

> For that portion of any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment ("Matters Excluded"); provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision. It is understood and agreed that **Claims** including both **Employment Practices Wrongful Acts** and Matters Excluded shall be allocated **Claims** (partially covered) and that Matters Excluded go beyond, and are not considered to be **Employment Practices Wrongful Acts** or acts that trigger coverage under the Policy.

Every aspect of the K.M. Matter arises out of, is based upon or attributable to, and involves, in whole or in part, allegations that K.M., a minor, engaged in unlawful sexual relations with Amey, her general manager and supervisor, over the course of several months. Based on the foregoing, Exclusion IV.15. applies to preclude coverage for the K.M. Matter in its entirety.

*See*, Exhibit "D," First Denial of the McMunn Claim at pp. 2-4.

78.     On or about March 5, 2024, McMunn filed an Amended Charge of Discrimination with the Equal Employment Opportunity Commission at EEOC Charge No.: 533-2024-01116 (hereinafter "McMunn Administrative Claim").

79.    Following the receipt of notice of the McMunn Administrative Claim, RSUI sent Vea Cheng of Star K.E. a second denial letter dated October 4, 2024 (hereinafter "Second Denial of the McMunn Claim"). A true and correct copy of RSUI's Second Denial of the McMunn Claim is attached hereto as Exhibit "E."

80.    In RSUI's Second Denial of the McMunn Claim, RSUI informed Mr. Cheng that RSUI considered the State Court Action and the McMunn Administrative Claim as a single **Claim** under the 2023-2024 D&O/EPLI Policy, first made on or about June 21, 2024, when Star K.E. first received a copy of McMunn's State Complaint. *See*, Exhibit "E," RSUI's Second Denial of the McMunn Claim at p. 3.

81.    In denying coverage for a second time, RSUI wrote:

> On March 5, 2024, K.M., identified as Kasie McMunn, filed the above-referenced Charge against Star K.E., arising from the same allegations of an improper sexual relationship with Amey. In the Charge, she alleges that Amey would manipulate timecards to have sex with her and despite reporting Amey's conduct to management, no corrective action was taken. K.M. alleges that she eventually reported the sexual and mental abuse to the police, resulting in charges being filed against Amey. K.M. contends that the alleged sexual misconduct was discriminatory on account of her sex and that she was subjected to retaliation for complaining of unlawful employment practices in violation of Title VI I of the Civil Rights Act of 1964.
>
> ...
>
> We incorporate by reference RSUI's July 10, 2024 correspondence to [Star K.E.] as though set forth fully herein.
>
> First, we direct your attention to Section V.B.3. of the Policy which provides:
>
>> **All Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single **Claim** for all purposes under this policy, shall be subject to the

Retention stated in Item 5. of the Declarations Page, and shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period.**

In light of the foregoing, and because the Charge arises from the same or related facts, circumstances and events pertaining to K.M.'s allegations involving sexual misconduct while employed by Star K.E., please be advised that the Charge and the Complaint shall be deemed a single **Claim** first made on or about June 21, 2024, when [Star K.E.] first received a copy of the Complaint.

As noted in RSUI's prior correspondence, we again direct your attention to Section IV.15. of the Policy, which states that RSUI shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured:**

> For that portion of any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment ("Matters Excluded"); provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision. It is understood and agreed that **Claims** including both **Employment Practices Wrongful Acts** and Matters Excluded shall be allocated **Claims** (partially covered) and that Matters Excluded go beyond, and are not considered to be **Employment Practices Wrongful Acts** or acts that trigger coverage under the Policy.

Based upon the facts and circumstances presently available to RSUI, the Charge alleges, arises out of, is based upon or attributable to or in any way involves, in whole or in part, forcible sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment. As such, for the same reason(s) that coverage is not available for the Complaint, no coverage is available for the Charge pursuant to the foregoing exclusion as well.

*See*, Exhibit "E" at p. 4.

82.     McMunn filed the Federal Court Action against Star K.E. and the McDonald's Defendants on or about January 31, 2025.

83.     On March 18, 2025, RSUI's counsel sent a letter to Vea Cheng of Star K.E. stating that RSUI had received a copy of the Federal Complaint that McMunn filed in the Federal Court Action and that RSUI was maintaining its denial of coverage for the McMunn Claim (hereinafter "Third Denial of the McMunn Claim"). A true and correct copy of RSUI's Third Denial of the McMunn Claim is attached hereto as Exhibit "F."

84.     In RSUI's Third Denial of the McMunn Claim, RSUI indicated that the McMunn Administrative Claim, State Court Action and Federal Court Action all arise "from the same or related circumstances and events," and that it was therefore considering those matters as a single **Claim** first made on or about June 21, 2024 when Star K.E. first received a copy of McMunn's State Complaint. *See*, Exhibit "F," RSUI's Third Denial of the T.M. Claim at p. 4.

85.     In denying coverage for a third time, RSUI wrote:

> We incorporate by reference RSUI's July 10, 2024 and October 4, 2024 letters to [Star K.E.] as though set forth fully herein.
>
> First, we direct your attention to Section V.B.3. of the Policy which provides:
>
>> All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single **Claim** for all purposes under this policy, shall be subject to the Retention stated in Item 5. of the Declarations Page, and shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.
>
> In light of the foregoing, and because the Federal Court Complaint arises from the same or related facts, circumstances and events pertaining to McMunn's allegations that she was subjected to sexual misconduct and

involved in an improper sexual relationship with her manager while employed by Star K.E., please be advised that the Charge, the State Court Complaint, and the Federal Court Complaint shall be deemed a single **Claim** first made on or about June 21, 2024, when [Star K.E.] first received a copy of the State Court Complaint.

As noted in RSUI's prior correspondence, we again direct your attention to Section IV.15. of the Policy, which states that RSUI shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

> For that portion of any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment ("Matters Excluded"); provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision. It is understood and agreed that **Claims** including both **Employment Practices Wrongful Acts** and Matters Excluded shall be allocated **Claims** (partially covered) and that Matters Excluded go beyond, and are not considered to be **Employment Practices Wrongful Acts** or acts that trigger coverage under the Policy.

Based upon the facts and circumstances presently available to RSUI, the Federal Court Complaint alleges, arises out of, is based upon or attributable to or in any way involves, in whole or in part, forcible sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment. As such, for the same reason(s) that coverage is not available for the State Court Complaint and the Charge, no coverage is available for the Federal Court Complaint pursuant to the foregoing exclusion as well.

*See*, Exhibit "F" at pp. 4-5.

86.     As of the time of the filing of this Complaint, RSUI continues to refuse to provide coverage to Star K.E. for the McMunn matter, including refusing to provide a defense for Star K.E. in the State Court Action and Federal Court Action, which is causing Star K.E. to have to incur significant legal costs.

## COUNT I – DECLARATORY JUDGMENT AGAINST RSUI

87.     Star K.E. incorporates all of the foregoing paragraphs of this Complaint as if set forth fully herein.

88.     An actual controversy exists between Star K.E. and RSUI regarding the rights and duties of the parties under the terms of the 2023-2024 D&O/EPLI Policy that, under the circumstances, permits this Court to declare the rights and duties of the parties in accordance with 28 U.S.C. §2201.

89.     RSUI issued the subject 2023-2024 D&O/EPLI Policy effective March 1, 2023 through March 2, 2024.

90.     The 2023-2024 D&O/EPLI Policy was a renewal policy.

91.     Section I. C. of the 2023-2024 D&O/EPLI Policy, Insuring Agreement, provides:

> With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

*See*, Exhibit "C," 2023-2024 D&O/EPLI Policy at p. 3 of 18.

92.     Star K.E. is an **Insured Organizations** under the subject 2023-2024 D&O/EPLI Policy.

93.     RSUI has admitted that the McMunn Administrative Claim, State Court Action and Federal Court Action (hereinafter collectively the "McMunn Claim") all arise "from the same or related facts, circumstances and events," and that therefore those matters are collectively a **Claim** for a **Wrongful Act** against an **Insured Organization** under the 2023-2024 D&O/EPLI Policy, first made on or about June 21, 2024.

94.     There is no dispute that the McMunn Claim was properly and timely submitted to RSUI by Star K.E. per the terms of the 2023-2024 D&O/EPLI Policy.

95.     However, RSUI has repeatedly denied Star K.E.'s requests for coverage for the McMunn Claim citing to Section IV, Exclusion 15, of the 2023-2024 D&O/EPLI Policy which reads:

> **SECTION IV. - EXCLUSIONS**
>
> The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:
>
> ...
>
> **15.** For that portion of any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment ("Matters Excluded"); provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision. It is understood and agreed that **Claims** including both **Employment Practices Wrongful Acts** and Matters Excluded shall be allocated **Claims** (partially covered) and that Matters Excluded go beyond, and are not considered to be **Employment Practices Wrongful Acts** or acts that trigger coverage under the Policy.

*See*, Exhibit "C," 2023-2024 D&O/EPLI Policy at pp. 8-10 of 18.

96.    RSUI's reliance on Exclusion 15 to deny coverage for the McMunn Claim is not a reasonable basis for denying coverage for multiple reasons.

97.    First, Star K.E. has recently come to learn that in the renewal policy issued to Star K.E. effective March 1, 2022 through March 1, 2023, RSUI had made a material change to the language of the D&O/EPLI Policy without disclosing that material change to Star K.E.

98.    Specifically, in the 2021-2022 D&O/EPLI Policy, the relevant portions of which are attached hereto as Exhibit "G," there was an exclusion under Section IV, Exclusion 15, of that 2021-2022 D&O/EPLI Policy which read:

> **SECTION IV. - EXCLUSIONS**
>
> The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:
>
> ...
>
> **15.** For that portion of any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape ("Matters Excluded"); provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision. It is understood and agreed that **Claims** including both **Employment Practices Wrongful Acts** and Matters Excluded shall be allocated **Claims** (partially covered) and that Matters Excluded go beyond, and are not considered to be **Employment Practices Wrongful Acts** or acts that trigger coverage under the Policy.

*See*, Exhibit "G," 2021-2022 D&O/EPLI Policy at pp. 8-10 of 18.

99.    In the 2022-2023 D&O/EPLI Policy, which was a renewal policy, the relevant portions of which are attached hereto as Exhibit "H," Section IV, Exclusion 15, of that 2022-2023 D&O/EPLI Policy was revised as follows:

**SECTION IV. - EXCLUSIONS**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

...

**15.** For that portion of any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment ("Matters Excluded"); provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision. It is understood and agreed that **Claims** including both **Employment Practices Wrongful Acts** and Matters Excluded shall be allocated **Claims** (partially covered) and that Matters Excluded go beyond, and are not considered to be **Employment Practices Wrongful Acts** or acts that trigger coverage under the Policy.

*See*, Exhibit "H," 2022-2023 D&O/EPLI Policy at pp. 8-10 of 18.

100.    The addition of the reference to "any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment" as being part of the "Matters Excluded" under Exclusion 15 of the 2022-2023 D&O/EPLI Policy was a material change (hereinafter the "Material Change") that was made by RSUI without any notice whatsoever to its insured, Star K.E., when it came time for renewal for the 2022-2023 policy period.

101.    That material change to Exclusion 15 was carried over to the subject D&O/EPLI Policy upon renewal in 2023, again without any notice to, and unbeknownst to, Star K.E.

102.    As such, that portion of Exclusion 15 is invalid and unenforceable under Pennsylvania law.

103.    Because RSUI's coverage denial relies upon this invalid language in Exclusion 15, the coverage denial is invalid and is without a reasonable basis.

104.    Next, even if it is determined that the language that was added to Exclusion 15 is not invalid and unenforceable, Exclusion 15 is still inapplicable.

105.    The 2023-2024 D&O/EPLI Policy sold to Star K.E. lists fifteen (15) actual or alleged **Employment Practices Wrongful Acts** that are covered **Claims** under the Policy:

> F. **Employment Practices Claim** means any **Claim** alleging an **Employment Practices Wrongful Act**.
>
> G. **Employment Practices Wrongful Act** means any actual or alleged:
>   **1.** Wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied employment contract;
>   **2.** Employment related harassment (including but not limited to sexual harassment);
>   **3.** Employment related discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);
>   **4.** Employment-related retaliation;
>   **5.** Employment-related misrepresentation to an **Employee** or applicant for employment with the **Insured Organization**;
>   **6.** Employment-related libel, slander, humiliation, defamation and/or invasion of privacy;
>   **7.** **Third Party Discrimination** or **Third Party Harassment**;
>   **8.** Wrongful failure to employ or promote;
>   **9.** Wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation, including the giving of defamatory statements in connection with an **Employee** reference;
>   **10.** Employment related wrongful discipline;
>   **11.** Failure to grant tenure or practice privileges;
>   **12.** Failure to provide or enforce adequate or consistent organization policies or procedures relating to employment performance;

**13.** Violations of the following federal laws (as amended) including all regulations promulgated thereunder:

    **a.** Family and Medical Leave Act of 1993;

    **b.** Americans with Disabilities Act of 1992 (ADA);

    **c.** Civil Rights Act of 1991;

    **d.** Age Discrimination in Employment Act of 1967 (ADEA), including the Older Workers Benefit Protection Act of 1990; or

    **e.** Title VII of the Civil Rights Law of 1964 (as amended) and 42 U.S.C. Section 1983, as well as the Pregnancy Discrimination Act of 1978;

**14.** Violation of an **Insured Person's** civil rights relating to any of the above; or

**15.** Negligent hiring, retention, training or supervision, infliction of emotional distress, or violation of an individual's civil rights, when alleged in conjunction with any of the foregoing items 1. through 14., whether such **Employment Practices Wrongful Act** as described in 1-15 above is committed directly, indirectly, intentionally or unintentionally, but only if the **Employment Practices Wrongful Act** actually or allegedly pertains to acts committed by an **Insured** and are alleged against an **Insured** by an **Insured Person** or applicant for employment with the **Insured Organization**.

*See*, Exhibit "C," 2023-2024 D&O/EPLI Policy at pp. 4-5 of 18.

106.　Based on the face of the Complaints filed in the State Court Action and Federal Court Action, all of the claims raised against Star K.E. are **Employment Practices Claims** alleging **Employment Practices Wrongful Acts** which trigger coverage under the 2023-2024 D&O/EPLI Policy. *See*, Exhibit "A," State Complaint and Exhibit "B," Federal Complaint.

107.　Exclusion 15 relied upon by RSUI to deny coverage makes the distinction between claims for **Employment Practices Wrongful Acts**, which are covered, and claims for "Matters Excluded," which are not covered.

108.    The definition of "Matters Excluded" is:

[A]ny **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, statutory rape <u>or</u> any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment.

*See*, Exhibit "C," 2023-2024 D&O/EPLI Policy at p. 10 of 18 (emphasis added).

109.    The definition of "Matters Excluded" reveals that Exclusion 15 is very limited in scope, and is only meant to exclude coverage for claims made directly against an alleged perpetrator of a forceable physical or sexual assault, battery, or molestation, including rape and statutory rape, arising out of that perpetrator's intentional and egregious conduct, as well as any rape or sexual assault claims made directly against that alleged perpetrator that in any way also involve any sexual harassment claim or allegations of sexual harassment.

110.    Simply put, if an employee (who is an **Insured**) rapes or sexually assaults another employee, and the employee-perpetrator is sued by the employee-victim, the employee-perpetrator is not covered simply because a component of the employee-victim's claims against them are claims that would typically be covered **Employment Practices Claims** (e.g., sexual harassment). The employee-perpetrator loses the benefit of coverage based on their conduct in committing the rape, sexual assault, etc.

111.    Exclusion 15 is certainly not meant to bar coverage for an employer that is sued by an employee for **Employment Practices Claims** alleging **Employment Practices Wrongful Acts** committed by that employer simply because that employee also happens to be an unfortunate victim of a co-employee-perpetrator's alleged rape or sexual assault, conduct for which the employer had no part in and no control over.

112.    This is supported by the qualifying language that applies to all of the exclusions in Section IV of the 2023-2024 D&O/EPLI Policy, including Exclusion 15, which reads: "The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the EXCLUSIONS set forth in SECTION IV." *See*, Exhibit "C," 2023-2024 D&O/EPLI Policy at p. 10 of 18.

113.    The qualifying language following Exclusion 15 forbids RSUI from imputing the wrongful acts of Star K.E.'s employee, Dezhane Amey, to Star K.E. for the purposes of denying coverage for the direct **Employment Practices Claims** filed by McMunn against Star K.E., as RSUI has done here.

114.    In the alternative, Exclusion 15 and the qualifying language are ambiguous, as the language of Exclusion 15 and the qualifying language are reasonably susceptible of different constructions, and reasonably capable of being understood in more than one sense, when applied to the particular facts of the McMunn Claim, and the ambiguous language must be construed against RSUI as the drafter of the 2023 D&O/EPLI Policy in this instance to require coverage to Star K.E. for the McMunn Claim.

115.    Lastly, Pennsylvania case law dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured.

116.    The 2023-2024 D&O/EPLI Policy is a policy that is marketed towards, and only made available to, McDonald's franchisees such as Star K.E.

117. It is widely known that the purpose and intent of D&O policies with EPLI coverage such as the subject 2023-2024 D&O/EPLI Policy in this matter is to protect business owners/employers such as Star K.E. from claims by current, former, or prospective employees alleging that their employer committed a wrongful act such as discrimination, harassment, including sexual harassment, or wrongful termination, as has been alleged in the McMunn Claim.

118. Star K.E. purchased the subject 2023-2024 D&O/EPLI Policy with the reasonable expectation that Star K.E. would be insured against wrongful employment practices liability causes of action such as the ones raised by McMunn in the McMunn Claim.

119. Therefore, Pennsylvania's doctrine of reasonable expectations applies to override RSUI's denial and coverage for the McMunn Claim.

120. In light of the foregoing, RSUI owes Star K.E. a defense in connection with the McMunn Claim under the 2023-2024 D&O/EPLI Policy.

WHEREFORE, Plaintiff, Star K.E., respectfully requests judgment in its favor, together with the following relief:

(1) A declaration that RSUI has a duty to defend Star K.E. in connection with the McMunn Claim;

(2) Any and all other relief that the Court deems just and appropriate.

## COUNT II – BREACH OF CONTRACT AGAINST RSUI

121. Star K.E. incorporates all of the foregoing paragraphs of this Complaint as if set forth fully herein.

122. As set forth above, RSUI and Star K.E. had a binding insurance coverage agreement in the subject 2023-2024 D&O/EPLI Policy.

123. Star K.E. complied with all policy terms and provisions under the 2023-3024 D&O/EPLI Policy.

124. In compliance with the 2023-2024 D&O/EPLI Policy, and as a condition precedent to the effectiveness of the 2023-2024 D&O/EPLI Policy, Star K.E. has satisfactorily paid all insurance premiums.

125. In compliance with the 2023-2024 D&O/EPLI Policy, Star K.E. provided RSUI with timely and proper notice of the McMunn Claim.

126. Star K.E.'s claim for defense in connection with the McMunn Claim is within the coverage afforded by the 2023-2024 D&O/EPLI Policy.

127. RSUI has a duty under the 2023-2024 D&O/EPLI Policy to defend Star K.E. against the McMunn Claim.

128. RSUI has repeatedly, and without any reasonable basis, refused to defend Star K.E. against the McMunn Claim.

129. RSUI's refusal to defend Star K.E. against the McMunn Claim constitutes a material breach of RSUI's contractual obligations under the 2023-2024 D&O/EPLI Policy.

130. As a result of RSUI's breach of its contractual duty to defend, Star K.E. has been forced to retain counsel at considerable expense to defend its interests in relation to the McMunn Claim.

131. Star K.E. is entitled to recover all sums that it has been and will be forced to expend as a result of RSUI's breach of its duty to defend its interests in relation to the McMunn Claim, including but not limited to all attorney fees, expenses, costs, Court awarded monetary sanctions, post-judgment interest, interest on any amounts expended, and all amounts that Star K.E. may be forced to expend to defend any outstanding claims that are within the scope of coverage under the 2023-2024 D&O/EPLI Policy.

WHEREFORE, Star K.E. demands judgment in its favor and against RSUI, in an amount in excess of $75,000, together with all costs or fees recoverable by law.

## COUNT III – BAD FAITH PURSUANT TO 42 PA. C.S. §8371 AGAINST RSUI

132.   Star K.E. incorporates all of the foregoing paragraphs of this Complaint as if set forth fully herein.

133.   As set forth in greater detail above, RSUI lacks any reasonable basis for denying coverage to Star K.E. for the McMunn Claim.

134.   It is believed and therefore averred that RSUI knew or otherwise recklessly disregarded its lack of a reasonable basis for denying coverage to Star K.E. for the McMunn Claim.

135.   RSUI's repeated denial of coverage and repeated refusal to pay for Star K.E.'s defense for the McMunn Claim constitutes a bad faith, frivolous, or otherwise unfounded denial of coverage under 42 Pa. C.S. §8371.

136.   Further, RSUI made a material change to the language of the Policy, as described previously herein, and deliberately failed and refused to disclose that material change to Star K.E. in connection with its subsequent renewals of the Policy, which conduct was intentional, willful and malicious and was done with the intent to deceive its insured and to conceal the fact that RSUI was attempting to diminish or decrease the coverage available from the prior Policies.

137.   As a result of the bad faith conduct described herein, Star K.E. suffered, and will continue to suffer, injury and damages, including but not limited to, attorney fees, expenses, costs, interest, and other compensatory damages recoverable pursuant to applicable Pennsylvania law.

138.   The conduct of RSUI is in violation of 42 Pa. C.S. §8371, and permits the recovery of attorney fees, costs, interest, punitive damages, and any other sums recoverable pursuant to the statute.

WHEREFORE, pursuant to 42 Pa. C.S. §8371, Plaintiff, Star K.E., prays that the Court enter judgment in its favor and against RSUI as follows:

i. Award interest on the amount of the McMunn Claim from the date the McMunn Claim was first made by Star K.E. in an amount equal to the prime rate of interest plus 3%;

ii. Award punitive damages against RSUI;

iii. Assess and award court costs and attorney fees against RSUI; and

iv. Award any such other further and greater relief as this Court deems just and proper.

## COUNT IV – NEGLIGENCE AGAINST MPA

139. Star K.E. incorporates all of the foregoing paragraphs of this Complaint as if set forth fully herein.

140. Upon information and belief, MPA is the Program Administrator of the McDonald's Program and an authorized agent for RSUI, and is responsible for, among other things, reviewing and explaining the insurance coverage to the clients.

141. Upon information and belief, as Program Administrator, MPA is also the first-level contact to handle front-line questions from owner/operators, retail agents and McDonald's Corp., is involved in underwriting and works with RPS to address any questions or issues outside of MPA's authority and through RPS regarding matters which need RSUI's attention.

142. MPA was also Star K.E.'s retail broker during the time when Star K.E. was seeking to renew its D&O/EPLI Policy for the 2022-2023 policy period.

143. Upon information and belief, on or about November 8, 2021, RSUI placed MPA on notice of policy language changes to RSUI's D&O/EPLI Policy for the 2022-2023 policy period, including the Material Change.

144. RSUI contends that, with respect to the McDonald's Program, all of the brokers, including MPA, are agents of the McDonald's franchisees, including Star K.E., and that, by providing notice of the Material Change to MPA, RSUI effectively provided notice of the Material Change to Star K.E.

145. As alleged above, RSUI, as Star K.E.'s insurer, was obligated to provide notice of the Material Change to its insured, Star K.E., and RSUI failed to do so at both the time of the renewal for the 2022-2023 policy period, and again at the time of the renewal for the 2023-2024 policy period, rendering the Material Change invalid and unenforceable under Pennsylvania law.

146. Alternatively, if it is determined that MPA, as a broker for the McDonald's Program, was an agent of Star K.E., then, under Pennsylvania law, MPA had a duty to Star K.E. to exercise the care that a reasonably prudent businessperson in the brokerage field would exercise under similar circumstances and, if MPA failed to exercise such care, and if such care is the direct cause of loss to Star K.E., then MPA is liable for such loss.

147. Also, if it is determined that MPA, as the retail broker for Star K.E., was an agent of Star K.E., then, under Pennsylvania law, MPA had a duty to Star K.E. to exercise the care that a reasonably prudent businessperson in the brokerage field would exercise under similar circumstances and, if MPA failed to exercise such care, and if such care is the direct cause of loss to Star K.E., then MPA is liable for such loss.

148. If it is determined that MPA, as a broker for the McDonald's Program and/or the retail broker for Star K.E., was an agent of Star K.E., then MPA, once placed on notice of the Material Change by RSUI, had a duty to provide Star K.E. with adequate notice that material terms of the 2022-2023 D&O/EPLI Policy would be changing, and MPA breached its duty to do so by failing to directly place Star K.E. on notice of the Material Change.

149.    Moreover, MPA undertook to send proposals for RSUI's 2022-2023 D&O/EPLI Policy to the approved retail brokers for the McDonald's Program, on or about November 30, 2021, which included notice of a "new" Network Security and Privacy Exclusion and other "highlights and notes" pertaining to RSUI's 2022-2023 D&O/EPLI Policy, but failed to include RSUI's summary of policy changes, including the Material Change, as part of its notice/proposal.

150.    Because of MPA's failure to include the Material Change in its proposal, Star K.E. was not placed on notice of the Material Change.

151.    MPA, in its role as a broker, knew, or should have known, that the information that it was providing to the approved retail brokers regarding the 2022-2023 D&O/EPLI Policy, including the changes to the Policy terms, would be used by the retail brokers to submit proposals to the franchisees, including Star K.E., to place the franchisees on notice of the changes.

152.    MPA had a duty to provide Star K.E. with adequate notice that material terms of the 2022-3023 D&O/EPLI Policy would be changing if, in fact, material terms were being changed, and MPA breached its duty to do so by failing to place Star K.E. on notice of the Material Change.

153.    Because of MPA's breach of its duties, Vea Cheng of Star K.E. was not placed on notice of the Material Change and accepted the proposal for the 2022-2023 D&O/EPLI Policy, proceeding under the reasonable expectation that he was renewing the terms that Star K.E. previously had in the 2021-2022 D&O Policy.

154.    The Material Change was carried over to the 2023-2024 D&O/EPLI Policy upon renewal in 2023, again without any notice to, and unbeknownst to, Star K.E.

155.    Star K.E. has sustained damages as a result of MPA's breach of its duties because RSUI has used the language of the Material Change as the basis for denying coverage for the McMunn Claim, resulting in Star K.E. sustaining damages in having to defend the McMunn Claim.

WHEREFORE, Star K.E. demands judgment in its favor and against RSUI, in an amount in excess of $75,000, together with all costs or fees recoverable by law.

## COUNT V – BREACH OF FIDICUARY DUTY AGAINST MPA

156.    Star K.E. incorporates all of the foregoing paragraphs of this Complaint as if set forth fully herein.

157.    If it is determined that MPA, as a broker, was an agent of Star K.E., as RSUI contends, then a fiduciary relationship existed between MPA and Star K.E. based on the parties' special relationship through the McDonald's Program which goes beyond mere reliance on superior skill, and into a relationship characterized by overmastering influence on one side or dependence, or trust, justifiably reposed on the other side.

158.    Upon information and belief, MPA is the Program Administrator of the McDonald's Program and an authorized agent for RSUI, and is responsible for, among other things, reviewing and explaining the coverage to the clients.

159.    Upon information and belief, as Program Administrator, MPA is also the first-level contact to handle front-line questions from owner/operators, retail agents and McDonald's Corp., is involved in underwriting and works with RPS to address any questions or issues outside of MPA's authority and through RPS regarding matters which need RSUI's attention.

160.    In its special role, MPA, along with RPS, received notice from RSUI of the changes to the policy language, including the Material Change.

161.    A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests, including a duty to disclose all relevant information.

162.    Here, MPA was placed on notice by RSUI of the Material Change and therefore had a fiduciary duty to disclose the Material Change to Star K.E. when it came time for Star K.E. to renew their D&O/EPLI Policy.

163.    MPA breached such duty when it failed to disclose the Material Change to Star K.E.

164.    As a result of MPA's breach of its fiduciary duty, as aforesaid, Star K.E. has sustained the losses and damages as set forth above.

WHEREFORE, Star K.E. demands judgment in its favor and against RSUI, in an amount in excess of $75,000, together with all costs or fees recoverable by law.

## COUNT VI – NEGLIGENCE AGAINST RPS

165.    Star K.E. incorporates all of the foregoing paragraphs of this Complaint as if set forth fully herein.

166.    Upon information and belief, RPS is RSUI's exclusive wholesale broker for the McDonald's Program and an authorized agent for RSUI, is RSUI's main contact for the McDonald's Program, and is the second-level contact to handle questions from owner/operators, retail agents and McDonald's Corp. that MPA could not address and elevated matters which need RSUI's attention.

167.    Upon information and belief, on or about November 8, 2021, RSUI placed RPS on notice of policy language changes to RSUI's D&O/EPLI Policy for the 2022-2023 policy period, including the Material Change.

168.    RSUI contends that, with respect to the McDonald's Program, all of the brokers, including RPS, are agents of the McDonald's franchisees, including Star K.E., and that, by providing notice of the Material Change to RPS, RSUI effectively provided notice of the Material Change to Star K.E.

169.    As alleged above, RSUI, as Star K.E.'s insurer, was obligated to provide notice of the Material Change to its insured, Star K.E., and RSUI failed to do so at both the time of the renewal for the 2022-2023 policy period, and again at the time of the renewal for the 2023-2024 policy period, rendering the Material Change invalid and unenforceable under Pennsylvania law.

170.    Alternatively, if it is determined that RPS, as a broker, was an agent of Star K.E., as RSUI contends, then, under Pennsylvania law, RPS had a duty to Star K.E. to exercise the care that a reasonably prudent businessperson in the brokerage field would exercise under similar circumstances and, if RPS failed to exercise such care, and if such care is the direct cause of loss to Star K.E., then RPS is liable for such loss.

171.    If it is determined that RPS, as a broker, was an agent of Star K.E., then RPS, once placed on notice of the Material Change by RSUI, had a duty to provide Star K.E. with adequate notice that material terms of the 2022-2023 D&O/EPLI Policy would be changing, and RPS breached its duty to do so by failing to directly place Star K.E. on notice of the Material Change.

172.    Because of RPS's breach of its duties, Vea Cheng of Star K.E. was not placed on notice of the Material Change and accepted the proposal for the 2022-2023 D&O/EPLI Policy, proceeding under the reasonable expectation that he was renewing the terms that Star K.E. previously had in the 2021-2022 D&O Policy.

173.    The Material Change was carried over to the 2023-2024 D&O/EPLI Policy upon renewal in 2023, again without any notice to, and unbeknownst to, Star K.E.

174.    Star K.E. has sustained damages as a result of RPS's breach of its duties because RSUI has used the language of the Material Change as the basis for denying coverage for the McMunn Claim, resulting in Star K.E. sustaining damages in having to defend the McMunn Claim.

WHEREFORE, Star K.E. demands judgment in its favor and against RSUI, in an amount in excess of $75,000, together with all costs or fees recoverable by law.

### COUNT VII – BREACH OF FIDUCIARY DUTY AGAINST RPS

175.    Star K.E. incorporates all of the foregoing paragraphs of this Complaint as if set forth fully herein.

176.    If it is determined that RPS, as a broker, was an agent of Star K.E., as RSUI contends, then a fiduciary relationship existed between RPS and Star K.E. based on the parties' special relationship through the McDonald's Program which goes beyond mere reliance on superior skill, and into a relationship characterized by overmastering influence on one side or dependence, or trust, justifiably reposed on the other side.

177.    Upon information and belief, RPS is RSUI's exclusive wholesale broker for the McDonald's Program and an authorized agent for RSUI, is RSUI's main contact for the McDonald's Program, and is the second-level contact to handle questions from owner/operators, retail agents and McDonald's Corp. that MPA could not address and elevated matters which need RSUI's attention.

178.    In its special role, RPS, along with MPA, received notice from RSUI of the changes to the policy language, including the Material Change.

179. A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests, including a duty to disclose all relevant information.

180. Here, RPS was placed on notice by RSUI of the Material Change and therefore had a fiduciary duty to disclose the Material Change to Star K.E. when it came time for Star K.E. to renew its D&O/EPLI Policy.

181. RPS breached such duty when it failed to disclose the Material Change to Star K.E.

182. As a result of RPS's breach of its fiduciary duty, as aforesaid, Star K.E. has sustained the losses and damages as set forth above.

WHEREFORE, Star K.E. demands judgment in its favor and against RSUI, in an amount in excess of $75,000, together with all costs or fees recoverable by law.

Respectfully submitted,

By:_____

Alan T. Silko, Esquire
Pa. I.D. #46837
ASilko@Silkolaw.com
Robert C. Bechtell Jr., Esquire
Pa. I.D. #208014
RBechtell@Silkolaw.com
SILKO & ASSOCIATES, P.C.
80 Emerson Lane
Suite 1305
Bridgeville, PA 15017
412-914-0144 (office)
*ATTORNEYS FOR PLAINTIFF*