**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STAR K.E., LLC,<br><br>Plaintiff,<br><br>v.<br><br>RSUI INDEMNITY COMPANY, MCGOWAN & COMPANY, INC. d/b/a MCGOWAN PROGRAM ADMINISTRATORS, and RISK PLACEMENT SERVICES, INC.,<br><br>Defendants. | Civil Action No. 2:25-CV-01317<br><br>Judge Cathy Bissoon |

**DEFENDANT RISK PLACEMENT SERVICES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Risk Placement Services, Inc. ("RPS"), by and through its undersigned attorneys, respectfully submits this Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

Plaintiff would have this Court hold a wholesale broker responsible for failing to notify an insured of language changes in an insurance policy notwithstanding the facts that (i) the insured never communicated with the wholesale broker; (ii) the insured never relied upon the wholesale broker for advice, information, or assistance in the procurement of its policies; and (iii) the wholesale broker was not responsible for the change in policy language. According to Plaintiff,

[1] For purposes of this Motion and Memorandum in Support thereof, RPS is citing the law of the forum and cases from other jurisdictions that are consistent with the general common law principles that would apply here. RPS has not yet performed a choice of law analysis and reserves its right in that regard.

even under the above facts, a wholesale broker owes a duty to an insured concomitant with either an agency or fiduciary relationship. Plaintiff asserts negligence and breach of fiduciary duty claims against RPS under this theory. No such duty exists, however, and Plaintiff's allegations fail as a matter of law. Moreover, the economic loss doctrine prohibits Plaintiff from asserting tort claims for purely economic damages.

No fact discovery will change the fundamental legal deficiencies of Plaintiff's Complaint. The Court should, therefore, dismiss Plaintiff's Complaint against RPS, with prejudice.

## II. FACTUAL BACKGROUND

This case involves an insurance coverage dispute arising from wrongful employment practice lawsuits filed against the Plaintiff and its McDonald's franchise. (Dkt. 1, Compl. at ¶¶ 9-10.) Kasie McMunn, a former employee at Plaintiff's McDonald's franchise, sued Plaintiff for alleged failures to, *inter alia*, (i) train McMunn on how to identify, address, and report incidents of sexual harassment, sexual assault, and/or battery; (ii) screen and supervise another employee, Dezhane Amey; (iii) discipline Amey following numerous reports of his alleged unwanted sexual advances and harassment toward McMunn; and (iv) address and investigate the complaints of Amey's alleged harassment and abuse. (*See id.* at ¶¶ 11-65.) McMunn alleges that Amey abused, harassed, and manipulated McMunn from March 2022 until her constructive discharge from employment in December 2022. (*See id.*)

Relevant to McMunn's underlying lawsuits is a policy—annually procured through a retail broker and issued by RSUI Indemnity Company ("RSUI")—for employment practices liability coverage. (*Id.* at ¶¶ 66-68.) RSUI issued this renewal policy to Plaintiff effective March 1, 2021, through March 2, 2022 (the "2021 Policy"), and subsequently effective March 1, 2022, through

March 2, 2023 (the "2022 Policy"), as well as March 1, 2023, through March 2, 2024 (the "2023 Policy"). (*Id.* at ¶ 70.)

RSUI denied Plaintiff coverage for the underlying lawsuits based on an exclusion in the 2023 Policy. Specifically, RSUI cited Section IV.15 of the 2023 Policy, which provides in part that coverage is excluded for the:

> [P]ortion of any Claim . . . made against any Insured alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment[.]"

(*Id.* at ¶ 77.) RSUI repeatedly denied coverage for the underlying lawsuits on this basis. (*See id.* at ¶¶ 81, 85-86, 95.)

Plaintiff filed its Complaint on August 28, 2025, alleging claims against RSUI for declaratory judgment, breach of contract, and bad faith. (*See generally*, *id.*) Plaintiff theorizes that the language in Section IV.15 of the 2023 Policy was materially changed when compared to the original 2021 Policy. According to Plaintiff, the original language in the 2021 Policy did not exclude from coverage "any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment," which now serves as the basis for RSUI's coverage denials (hereafter, the "Alleged Material Change"). (*Id.* at ¶¶ 97-99.) Rather, Plaintiff claims that RSUI inserted the Alleged Material Change into the 2022 Policy and subsequently included it upon renewal of the 2023 Policy without any notice to Plaintiff. (*Id.* at ¶¶ 100-01.) Plaintiff therefore alleges that, because RSUI failed to notify Plaintiff of the Alleged Material

Change, this portion of Section IV.15 is invalid and unenforceable, and RSUI's denial of coverage is improper. (*Id.* at ¶¶ 102-03.)[2]

Plaintiff also pleads negligence and breach of fiduciary duty claims against McGowan & Company, Inc. d/b/a McGowan Program Administrators ("MPA"). The Complaint alleges MPA is "responsible for . . . reviewing and explaining the insurance coverage to the clients." (*Id.* at ¶¶ 140, 158.) It likewise alleges MPA is the "first-level contact to handle front-line questions from owner/operators, retail agents and McDonald's Corp." and "works with RPS to address any questions or issues outside of MPA's authority and through RPS regarding matters which need RSUI's attention." (*Id.* at ¶¶ 141, 159.) Plaintiff further alleges that MPA was its retail broker during the 2022-2023 policy year.[3] (*Id.* at ¶¶ 67, 142.) Moreover, Plaintiff even claims that MPA sent proposals for the 2022 Policy to Plaintiff's other approved retail broker options which notified of new network security and privacy exclusions, as well as other "highlights and notes." (*Id.* at ¶ 149.) These proposals, however, failed to notify of the Alleged Material Change. (*Id.*)

Plaintiff therefore contends that MPA—as either its agent or fiduciary—owed a duty to notify Plaintiff of the Alleged Material Change and breached that duty when it failed to provide notification. (*Id.* at ¶¶ 146-48, 152, 157, 162-63.) This breach evidently caused Plaintiff to accept the 2022 Policy (and, subsequently, the 2023 Policy) without notice of the Alleged Material

---

[2] Plaintiff additionally claims against RSUI that, even if the Alleged Material Change is enforceable, Section IV.15 is inapplicable because (i) it does not impute the conduct of Dezhane Amey onto the Plaintiff; (ii) it is ambiguous when construed against the policy's qualifying language; and (iii) it is overridden by Pennsylvania's doctrine of reasonable expectations. (*Id.* at ¶¶ 104-19.)

[3] Plaintiff alleges that Arthur J. Gallagher & Co. was its retail broker during the 2023-2024 policy year. (*Id.* at ¶ 67.)

Change, thereby damaging Plaintiff due to RSUI's reliance on the Alleged Material Change as the basis for denying coverage in McMunn's lawsuits. (*Id.* at ¶¶ 153-55, 164.)

Conspicuously absent from the Complaint are similar factual allegations against RPS. Plaintiff ***does not*** allege that (i) RPS was Plaintiff's retail broker; (ii) RPS was a "first-level" contact to Plaintiff; (iii) RPS was responsible for advising or assisting Plaintiff with questions related to insurance procurement or any policy changes; (iv) Plaintiff ever communicated directly with RPS at any time during procurement of the original 2021 Policy or the renewal of the 2022 or 2023 Policies; (v) RPS provided notice to other brokers regarding certain changes in RSUI's 2022 Policy; (vi) Plaintiff ever sought the advice or input of RPS related to RSUI's insurance procurement (or any other topic); or (vii) Plaintiff ever attempted to contact or consult with RPS regarding any matter whatsoever.

Rather, Plaintiff alleges only that RPS is the "exclusive wholesale broker" of RSUI and the "second-level contact" to handle questions from the insured. (*Id.* at ¶¶ 166, 177.) In other words, Plaintiff acknowledges that it had no contact with RPS and, instead, RPS's role was only to address questions which Plaintiff's first-level contact (MPA) was otherwise incapable of answering. Nevertheless, the Complaint asserts the same negligence and breach of fiduciary duty causes of action against RPS as it does against MPA, claiming that RPS was both an agent and fiduciary of Plaintiff and owed Plaintiff a duty to notify of the Alleged Material Change. (*Id.* at ¶¶ 170-71, 176, 180.) RPS's alleged failure to provide notification, according to Plaintiff, purportedly caused it to sustain losses related to RSUI's coverage denials. (*Id.* at ¶¶ 174, 182-83.)

Plaintiff seeks recovery of damages from RPS for the legal costs incurred in defending the underlying lawsuits. (*See id.* at ¶ 174.) As RPS will demonstrate, it owed no legal duty whatsoever to Plaintiff and, thus, had no obligation to provide notice of the Alleged Material Change.

Moreover, Plaintiff's tort claims seek only the recovery of economic damages and are therefore precluded under the economic loss doctrine. For these reasons, both the negligence and breach of fiduciary duty claims fail as a matter of law and must be dismissed, with prejudice.

## III. STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a district court to dismiss claims that fail to state a legal basis upon which relief can be granted. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (Courts "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements."). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79.

The United States Court of Appeals for the Third Circuit explained the process for determining whether a complaint meets the pleadings standard as follows:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. This last step is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (internal quotations and citations omitted).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

## IV. ARGUMENT

Plaintiff's negligence and breach of fiduciary duty claims against RPS should be dismissed because RPS, as a wholesale broker which had no communication with Plaintiff throughout the entire insurance procurement or renewal processes, had no relationship with Plaintiff and, accordingly, owed no duty to Plaintiff as a matter of law. Without the existence of a duty owed, RPS cannot be liable to Plaintiff under either theory. Furthermore, the economic loss doctrine bars Plaintiff from asserting these tort claims against RPS. Thus, dismissal of both claims against RPS, with prejudice, is appropriate.

### A. Plaintiff's Negligence Claim Against RPS Should Be Dismissed Because RPS Owed No Duty as a Matter of Law

"A *prima facie* negligence claim requires the plaintiff to show that: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27 (Pa. 2006) (citing *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003)). The initial element in any negligence action is that the defendant owes a duty of care to the plaintiff, the existence of which is a question of law for the court to decide. *Wisniski v. Brown & Brown Ins. Co. of PA*, 906 A.2d 571, 576 (Pa. Super. 2006). The Pennsylvania Supreme Court set forth a five-factor test for determining whether a duty exists:

> [T]he legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perception of history, morals, justice and society. The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000) (citations omitted).

Plaintiff purports to impose a duty upon RPS by virtue of the parties' supposed "agency" relationship. (Compl. at ¶ 171 ["If it is determined that RPS, as a broker, was an agent of [Plaintiff], then RPS, once placed on notice of the [Alleged] Material Change by RSUI, had a duty to provide [Plaintiff] with adequate notice that material terms of the [2022 Policy] would be changing[.]"].) Notably, Plaintiff seems unconvinced by its own allegations, as it fails to affirmatively plead the existence of this agency relationship and instead bases its claim only on the supposed word of RSUI. Regardless, the Complaint's factual allegations prove that RPS was not an "agent" of Plaintiff because no relationship whatsoever exists between these parties. Moreover, the remainder of the *Althaus* factors likewise demonstrate that RPS owes no duty as a matter of law to Plaintiff.

**1. No Relationship Exists Between Plaintiff and RPS**

Three basic elements exist within an agency relationship: (i) the manifestation by the principal that the agent shall act for him; (ii) the agent's acceptance of the undertaking; and (iii) the understanding of the parties that the principal is to be in control of the undertaking. *Wisniski*, 906 A.2d at 577 (citing *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000)). "The key and distinctive feature of an agency relationship is the agent's power to affect the legal relationship of the principal with third parties: *e.g.*, entering into contracts for them, buying or selling goods for them, or subjecting the principal to potential tort liability." *Id.* Indeed, an agency relationship

must arise from an action as "a matter of consequence or trust, such as the ability to actually bind the principal or alter the principal's legal relations." *Id.* (quoting *Basile*, 761 A.2d at 1120).

The Court need not proceed beyond the first element of an agency relationship to determine that no such relationship exists here. Plaintiff claims that its own representative, Vea Cheng, "accepted the proposal for the [2022 Policy]" without knowledge of the Alleged Material Change, implicitly admitting that Plaintiff, and only Plaintiff, could bind itself to the policy. (Compl. at ¶ 172.) RPS could not have unilaterally bound Plaintiff to RSUI's policy even if it wanted to. As the "key and distinctive feature" of an agency relationship is the agent's power to affect the principal's legal relationship with third parties, such as entering into contracts for the principal, *Wisniski*, 906 A.2d at 577, Plaintiff's own allegations confirm that RPS did not have such a power. There is simply no allegation in the Complaint (nor could there be) that Plaintiff indicated or desired that RPS would act on its behalf.

Even more telling, though, are Plaintiff's additional allegations about RPS. The Complaint admits that Plaintiff never communicated with RPS throughout the entire insurance procurement or renewal processes, as RPS was allegedly the "second-level contact" that only communicated as needed with the retail broker.[4] (Compl. at ¶¶ 166, 177) Conversely, Plaintiff pleads that it communicated only with its first-level contact—the retail broker, alleged to be MPA during renewal of the 2022 Policy—regarding questions arising from the insurance procurement or renewal. (*Id.* at ¶¶ 141, 159) As if that were not enough, Plaintiff acknowledges that MPA, its first-level contact, was responsible for reviewing and explaining RSUI's policy coverage to Plaintiff.

[4] Notably, the Complaint never alleges that any communication between RPS and Plaintiff's retail brokers ever took place regarding RSUI's policies, questions arising therefrom, or any other topic whatsoever.

(*Id.* at ¶¶ 140, 158.) The Complaint is silent as to any similar obligation belonging to RPS. Additionally, Plaintiff fails to allege that RPS, unlike MPA, sent proposals of the 2022 Policy to other brokers of Plaintiff that notified of certain changes but omitted reference to the Alleged Material Change.

Plaintiff would therefore have this Court accept that—despite Plaintiff never communicating with RPS, never relying upon the advice, assistance, or guidance of RPS, and never alleging that any communications between RPS and a retail broker ever occurred—an agency relationship somehow existed between these parties.

Furthermore, RPS's status as an "exclusive wholesale broker," *id.* at ¶¶ 166, 177, sheds light on the relationship (or lack thereof) between these parties. Consistent with how Plaintiff describes RPS in the Complaint, a wholesale broker is a type of insurance broker who acts as an intermediary between a retail broker and an insurer but has no contact with the insured. *See Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 376 (Tex. App. 2005) ("Wholesale brokers act as middlemen between retail insurance agents and insurance companies."); "Glossary of Insurance and Risk Management Terms" (13th ed. 2016), International Risk Management Institute. The wholesale broker is **not** the direct contact with the insured and is instead ordinarily retained by the insured's retail broker without the insured's knowledge. While Third Circuit and Pennsylvania courts have sparsely analyzed a wholesale broker's responsibilities to an insured, cases such as *Wisniski*, *supra*, dictate that even retail brokers—those entities which were hired by and have direct contact with the insureds—are not "agents" of the insureds where the brokers lack the power to bind insureds within an insurance contract. *See Wisniski*, 906 A.2d at 578. RPS, as an "exclusive wholesale broker," not only lacks the power to bind Plaintiff within an insurance contract but also (i) was not retained by Plaintiff; (ii) had no communication with Plaintiff; and (iii) evidently

operated as only the "second-level contact" to assist Plaintiff's retail broker (despite no allegations that this assistance was ever needed). As such, Plaintiff has no basis under Pennsylvania law to claim that RPS owed it a duty by virtue of an agency relationship.

Persuasive authorities from other jurisdictions support this conclusion, holding that wholesale brokers which had no communication with insureds are not "agents" of the insureds and therefore owe no duty to the insureds. For example, in *T.J.'s Sports Bar, Inc. v. Scottsdale Ins. Co.*, the insured alleged a wholesale broker was negligent for failing to "advise as to gaps in coverage" between insurance policies, among other reasons. No. 06-cv-8938, 2007 WL 196898, at *1 (E.D. La. Jan. 23, 2007). However, the court granted the wholesale broker's motion to dismiss, reasoning that it was not an agent of the insured, and therefore owed no legal duty, when the wholesale broker never communicated with the insured. *Id.* at *2. Ultimately, the court recognized that the insured "ha[d] no possibility of recovery" against the wholesale broker. *Id.*; *see also Sinmier LLC v. Everest Indem. Ins. Co.*, 666 F. Supp. 3d 690, 705 (N.D. Ohio 2023); (holding that a wholesale broker which had no communication with the insured owed no duty to the insured or the insured's lender); *Plata v. Triton Diving Servs. LLC*, No. 14-cv-0131, 2015 WL 5822876, at *1 (E.D. La. Oct. 6, 2015) ("[A]n insurance customer has no possibility of recovery against a wholesale broker who has no direct communications with the insurance customer."); *Nguyen v. Scottsdale Ins. Co.*, No. 06-cv-9996, 2007 WL 647307, at *2 (E.D. La. Feb. 27, 2007) (granting wholesale broker's motion to dismiss "because wholesale brokers do not communicate with insurance customers, [and therefore] plaintiffs have no possibility of recovery against them"); *Alpha/Omega Concrete Corp. v. Ovation Risk Planners, Inc.*, 197 A.D.3d 1274, 1282, 154 N.Y.S.3d 113, 124 (2021) (holding that wholesale broker was not subject to contribution claim as a third-party defendant because it owed no duty of care to the proposed insured); *N. Am. Shipbuilding, Inc. v. S. Marine & Aviation*

*Underwriting*, Inc., 930 S.W.2d 829, 836 (Tex. App. 1996) (affirming dismissal of claims against wholesale broker because it owed no duty to the insured to explain the terms of and coverages included in the application).

Plaintiff will undoubtedly rely on *Spring Lock Scaffolding v. Aspen Specialty Insurance Co.* to support its position. This reliance, however, is misplaced. It is true that *Spring Lock Scaffolding* involved a wholesale broker moving to dismiss an insured's negligence claim on the basis that it owed the insured no duty. No. 07-cv-3516, 2008 WL 11515633, at *5 (E.D. Pa. May 7, 2008). It is likewise true that the court denied the broker's motion to dismiss so that the parties could engage in discovery to ascertain the nature of the alleged "agency" relationship. *Id.* However, one crucial detail separates *Spring Lock Scaffolding* from the case at hand: the insured in *Spring Lock Scaffolding* alleged that the broker provided it with preliminary documents describing the proposed insurance policy. *Id.* By providing the insured with these preliminary policy documents—which turned out to be different than the ultimate policy, thus giving rise to the claim—the broker's conduct potentially implicated some type of relationship (and some type of duty) among these parties. Indeed, given this allegation of fact, there was at least a *possibility* that some agency relationship existed, and it should come as no surprise that the court declined to dismiss the broker defendant before the parties could engage in discovery and thoroughly assess whether such a relationship truly arose. Stated differently, the insured pled sufficient facts to demonstrate an agency relationship *might* exist and impose duties upon the broker, and discovery was necessary to determine the extent of those duties, if any.

Unlike in *Spring Lock Scaffolding*, Plaintiff's Complaint alleges **nothing** that might give rise to even the *possibility* of an agency relationship between these parties. Plaintiff does not claim that RPS provided it with any policy documentation or information which turned out to be false or

different from the ultimate policy. Plaintiff does not claim that it relied upon RPS's knowledge or expertise to obtain appropriate coverage. Plaintiff does not claim that it authorized RPS to act on its behalf. Plaintiff does not claim that it relied upon any advice or input from RPS. Plaintiff does not claim that it trusted RPS to act in its best interests. Plaintiff does not even claim that RPS provided information, advice, guidance, or insights to any of Plaintiff's retail brokers regarding its insurance procurement or renewals. Ultimately, Plaintiff does not claim that RPS did anything at all. Instead, the Complaint's only concrete allegations of fact related to RPS are that (i) Plaintiff never communicated with RPS and (ii) RPS was the theoretical "second-level contact" meant to address questions beyond the purview of Plaintiff's retail broker (despite no alleged specific instances of this conduct). These allegations simply do not and cannot support a cognizable claim.

Plaintiff attempts to fabricate the existence of an agency relationship with an entity it neither communicated with nor relied upon throughout the insurance procurement or renewal processes. Such a relationship has no basis under the law. The facts, as pleaded, show that no relationship whatsoever existed between Plaintiff and RPS.

### 2. No Duty Arises Upon Review of the Remaining *Althaus* Factors

The remaining *Althaus* factors similarly dictate that RPS owed no duty to the Plaintiff. The *Wisniski* court, analyzing these factors in the context of a retail broker's potential duty, held that (i) brokers are not necessarily specialists in loss prevention, so the social utility of a broker's conduct may be limited; (ii) the risk/utility analysis does not weigh strongly in favor of either side; (iii) the consequence of imposing a duty upon the broker to advise outweighs the utility of recognizing a duty; and (iv) no strong public interest exists in requiring insurance brokers to advise clients. *Wisniski*, 906 A.2d at 579-81; *cf. BSD-360, LLC v. Philadelphia Indem. Ins. Co.*, 580 F.

Supp. 3d 92, 112 (E.D. Pa. 2022) ("[N]either insurers nor brokers are obligated to explain clearly worded and unambiguous policy language to the insured.").

Given RPS's status as a wholesale broker which had no communication with Plaintiff—further removing it from any connection to Plaintiff—there can be no dispute that these remaining factors weigh in its favor. Simply put, RPS owed no duty to the Plaintiff. The Complaint's attempt to impose such a duty where none exists fails as a matter of law. Plaintiff's negligence claim against RPS must be dismissed, with prejudice.

### B. <u>Plaintiff's Breach of Fiduciary Duty Claim Against RPS Should Be Dismissed Because RPS Owed No Duty as a Matter of Law</u>

Plaintiff's breach of fiduciary duty claim fails as a matter of law because, once again, it cannot establish any duty owed by RPS. "A fiduciary duty is the highest duty implied by law." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819 (Pa. 2017). It imposes an obligation to "act with the utmost good faith in furthering and advancing the other person's interests." *Id.* Such a duty does not arise, however, merely because one party relies on or pays for the specialized skill of another party. *Id.* at 822. Rather, "the critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by overmastering influence on one side or weakness, dependence, or trust, justifiably reposed on the other side, which results in the effective ceding of control over decision-making by the [dependent] party[.]" *Id.* at 823 (internal quotations and citation omitted); *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 23 (Pa. Super. 2002) ("A confidential [or fiduciary] relationship is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to the potential abuse of power.").

Plaintiff parrots the boilerplate language of a fiduciary relationship under Pennsylvania law in its claim against RPS. (Compl. at ¶ 176 [alleging a fiduciary relationship existed between

Plaintiff and RPS "based on the parties' special relationship through the McDonald's Program which goes beyond mere reliance on superior skill, and into a relationship characterized by overmastering influence on one side or dependence, or trust, justifiably reposed on the other side"].) But Plaintiff's own facts alleged throughout the Complaint undermine this contention. Plaintiff did not cede decision-making control for accepting the proposed insurance policies to any party, including RPS; Plaintiff never communicated with RPS, the "second-level contact" which only purportedly communicated with retail brokers; and Plaintiff never relied on or sought the advice of RPS for anything. It is obvious from Plaintiff's own allegations that RPS did not subject Plaintiff to RPS's "overmastering influence."

Pennsylvania law "presume[s] that, for the great majority of broker-client interactions, the relationship will not be so extremely one-sided as to be confidential." *Wisniski*, 906 A.2d at 578-79. That is, the ordinary relationship between the insured and the ***retail broker*** whom the insured hires and with whom the insured communicates is, at its closest, an arm's-length business relationship. *Id.* at 597. Indeed, "a broker's relationship with the insured is ordinarily an arm's length transaction, rather than one which is inherently marked by extreme dependence and trust." *Id.* at 597 n.6. And yet, Plaintiff alleges that a closer connection—a fiduciary relationship, imposing the highest standard of care—exists between the insured and a ***wholesale broker*** whom the insured does not hire, with whom the insured does not communicate, and upon whom the insured does not rely. Courts addressing this position have rejected it wholeheartedly. *See, e.g.*, *CBC Fin., Inc. v. Apex Ins. Managers, LLC*, 291 F. App'x 30, 32 (9th Cir. 2008) (affirming trial court's ruling that a wholesale broker does not owe a fiduciary duty to the insured); *Belmont Commons, L.L.C. v. Axis Surplus Ins. Co.*, No. 06-cv-6879, 2008 WL 2945926, at *1 (E.D. La. July 28, 2008) (collecting cases and recognizing that an intermediary broker with no direct

relationship or contact with the insured cannot be liable to the insured for breach of fiduciary duty). Stated differently, RPS has already established that it owed no duties by virtue of an agency relationship with Plaintiff. It follows, therefore, that no duties can arise by virtue of a fiduciary relationship, which implies an even higher standard of care. *Yenchi*, 161 A.3d at 819.

Plaintiff's conclusory allegations of RPS's purported fiduciary duty lack any foundation whatsoever. Brokers are not fiduciaries of the insureds. To the contrary, where the insured neither communicates with nor relies upon the influence of the wholesale broker (which, here, is conceded by the Complaint), there can be no duty imposed on the latter. For this reason, Plaintiff's breach of fiduciary duty claim against RPS fails as a matter of law and must be dismissed, with prejudice.

### C. Plaintiff's Negligence and Breach of Fiduciary Duty Claims Fail as a Matter of Law Under the Economic Loss Doctrine

Even if Plaintiff could somehow convince this Court that RPS owed it a duty (which it cannot), its negligence and breach of fiduciary duty claims against RPS each fail under the economic loss doctrine. Pennsylvania's economic loss doctrine prohibits a plaintiff from asserting tort causes of action for damages which are purely economic in nature and unaccompanied by physical injury or property damage. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008) (citing *Adams v. Copper Beach Townhome Cmtys., L.P.*, 816 A.2d 301, 305 (Pa. Super. 2003)). Pennsylvania courts have extended the economic loss doctrine's applicability to instances where no contractual privity existed between the parties. *Am. Stores Properties, Inc. v. Spotts, Stevens & McCoy, Inc.*, 648 F. Supp. 2d 707, 713 (E.D. Pa. 2009).

Plaintiff sued RPS in tort for negligence and breach of fiduciary duty. (*See generally* Compl.) However, Plaintiff claims only economic damages arising from RPS's alleged breach of duty. Specifically, Plaintiff alleges RPS's breach "result[ed] in [Plaintiff] sustaining damages in having to defend" the McMunn lawsuits. (*Id.* at ¶ 174; *see also id.* at ¶¶ 86 [Plaintiff allegedly

incurred "significant legal costs" in defending the McMunn lawsuits]; 182 ["As a result of RPS's breach of its fiduciary duty, as aforesaid, [Plaintiff] has sustained the losses and damages as set forth above."].) Based on a fair reading of the Complaint's allegations, Plaintiff clearly seeks to recover only economic losses sustained in defending the underlying lawsuits. Such recovery is not possible via tort claims against RPS.

Unsurprisingly, Pennsylvania courts and a variety of federal jurisdictions have dismissed tort claims against brokers where the plaintiffs alleged purely economic damages. *See, e.g.*, *All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*, 162 F. App'x 554, 559-60 (6th Cir. 2006) (dismissing negligence claims by insured against wholesale broker pursuant to the economic loss doctrine); *Sinmier*, 666 F. Supp. 3d at 705 (economic loss doctrine precluded tort claims against wholesale broker where insured's lender failed to establish wholesale broker owed it any independent duty); *Atl. Specialty Ins. Co. v. Bindea*, 656 F. Supp. 3d 624, 642 (W.D. Va. 2023) (dismissing insured's negligence and breach of fiduciary claims, among other torts, against wholesale broker pursuant to economic loss doctrine); *Preferred Contractors Ins. Co., RRG, LLC v. Sherman*, 193 A.3d 1009, 1022 (Pa. Super. 2018) (affirming summary judgment to broker on insurer's tort claims pursuant to economic loss doctrine).

The same result is necessary here. Putting aside the fact that RPS owed Plaintiff no duty in the first place, Plaintiff's causes of action should nevertheless be dismissed as impermissible tort claims seeking recovery for alleged purely economic harms. For this additional reason, Plaintiff's negligence and breach of fiduciary duty claims against RPS fail as a matter of law and must be dismissed, with prejudice.

## V. CONCLUSION

Plaintiff has precluded itself from asserting any viable claim against RPS. According to the Complaint, Plaintiff never communicated with RPS; Plaintiff never relied on or sought the advice of RPS; RPS took no action which may have implicated some heightened duty of care; and RPS was not responsible for directly communicating with or advising Plaintiff regarding insurance procurement, renewals, or policy information. By its own admissions, Plaintiff has foreclosed any chance of establishing that this wholesale broker owed Plaintiff any duty—be it under an agency relationship, fiduciary relationship, or otherwise. No amount of fact discovery will change this fundamental legal deficiency. Rather, the facts as pled make clear that no relationship existed between Plaintiff and RPS and therefore RPS had no obligation to notify of the Alleged Material Change. In addition, regardless of the existence of a duty, the economic loss doctrine prohibits Plaintiff from asserting tort claims against RPS solely for alleged economic damages. Plaintiff's negligence and breach of fiduciary duty claims against RPS each fail as a matter of law. For each of the foregoing reasons, Defendant Risk Placement Services, Inc., respectfully requests the entry of an Order granting its Motion to Dismiss and dismissing Plaintiff's Complaint, with prejudice.

Date: November 14, 2025

Respectfully submitted,

*/s/ F. Timothy Grieco*

F. Timothy Grieco (Pa. I.D. No. 81104)
Christopher S. Winkler (Pa. I.D. No. 328895)
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
T: (412) 566-2070
F: (412) 566-6099
tgrieco@eckertseamans.com
cwinkler@eckertseamans.com

*Counsel for Defendant, Risk Placement Services, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing **DEFENDANT RISK PLACEMENT SERVICES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was electronically filed with the Court this 14th day of November 2025. Notice of this filing will be sent to counsel of record by operation of the Court's Case Management/Electronic Case Files (CM/ECF) System.

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

*/s/ F. Timothy Grieco*
F. Timothy Grieco, Pa. ID. No. 81104
tgrieco@eckertseamans.com