UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STAR K.E., LLC<br><br>Plaintiff,<br><br>v.<br><br>RSUI INDEMNITY COMPANY, MCGOWAN & COMPANY, INC. d/b/a MCGOWAN PROGRAM ADMINISTRATORS and RISK PLACEMENT SERVICES, INC.<br><br>Defendants. | Civil Action No.: 2:25-1317 |

**RESPONSE IN OPPOSITION TO RISK PLACEMENT SERVICES, INC.'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff, Star K.E., LLC (hereinafter "Plaintiff"), by and through its undersigned counsel, files the following Response in Opposition to Defendant, Risk Placement Services, Inc.'s ("RPS"), Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint.

## I. BACKGROUND

This is an insurance coverage action arising out of defendant, RSUI Indemnity Company, Inc.'s ("RSUI"), denial of coverage for two separate lawsuits filed against Plaintiff. Coverage was sought by Plaintiff pursuant to a directors and officers (D&O) liability insurance policy with employment practices liability insurance (EPLI) coverage that was issued to Plaintiff by RSUI for the 2023-2024 policy period (the "2023-2024 D&O/EPLI Policy"). In refusing to provide a defense for the claims, RSUI relied on a sexual misconduct exclusion ("Exclusion 15") contained in Section IV (titled "Exclusions") of the 2023-2024 D&O/EPLI Policy.

By way of background, Vea Cheng, through Plaintiff, Star K.E., owned and operated a franchised McDonald's-brand restaurant located in Delmont, Pennsylvania (the "Restaurant") during the relevant time frame.[1] As a McDonald's franchisee, Mr. Cheng was presented with a list of approved retail insurance brokers to choose from to act as Plaintiff's broker for the purpose of procuring various types of insurance for Plaintiff.[2] Mr. Cheng selected McGowan from the approved list of retail brokers as Plaintiff's retail broker for the 2022-2023 policy year, and Arthur J. Gallagher & Co. as Plaintiff's retail broker for the 2023-2024 policy year.[3]

Each year, the approved retail insurance brokers present Plaintiff, and presumably the other McDonald's franchisees, with insurance package proposals that include options for various types of business insurance through different insurances carriers, such as commercial general liability insurance, umbrella insurance, employment practices liability insurance (EPLI), etc.[4] For the last several years, included in those proposals was only one option for EPLI insurance, which was a directors and officers (D&O) liability policy with EPLI coverage issued by RSUI under what was titled the McDonald's Owner/Operators D&O/EPL/FID Program ("McDonald's Program").[5] Therefore, for several consecutive policy years leading up to and including the 2023-2024 policy year, Plaintiff purchased renewal D&O policies with EPLI coverage from RSUI as part of the McDonald's Program for the purpose of protecting Plaintiff from claims made by employees for wrongful employment practices such as sexual harassment claims, discrimination claims, wrongful termination claims, etc.[6]

---

[1] Dkt. 1, Complaint at ¶ 9.
[2] *Id.* at ¶ 66.
[3] *Id.* at ¶ 67.
[4] *Id.* at ¶ 68.
[5] *Id.*
[6] *Id.* at ¶¶ 69-70, 117-118.

Kasie McMunn (hereinafter "McMunn"), a female former employee of Plaintiff who worked at the Restaurant when she was a minor, filed two separate employment lawsuits against Plaintiff, as well as McDonald's Corporation and McDonald's USA, LLC (hereinafter collectively the "McDonald's Defendants"), in the Court of Common Pleas of Westmorland County, Pennsylvania at Case No. 1934 of 2024 (hereinafter the "State Court Action") and in the United States District Court for the Western District of Pennsylvania at Case No. 2:25-cv-152 (hereinafter the "Federal Court Action"), both of which arise out of the same set of alleged facts and circumstances surrounding McMunn's employment at the Restaurant,[7] specifically the alleged severe and pervasive sexual harassment from, and alleged unlawful sexual relations with, a 23-year-old male employee at the Restaurant, Dezhane Amey.[8] For the purposes of this Response in Opposition, the State Court Action and the Federal Court Action will hereinafter collectively be referred to as the "Subject Claims."

Plaintiff submitted the Subject Claims to RSUI with a request that RSUI provide Plaintiff with a defense against the Subject Claims per the terms of the subject 2023-2024 D&O/EPLI Policy.[9] In denying coverage for the Subject Claims, RSUI relied on a sexual misconduct exclusion ("Exclusion 15") contained in Section IV (titled "Exclusions") of the 2023-2024 D&O/EPLI Policy.[10]

After the Subject Claims were submitted to RSUI for coverage and rejected, Plaintiff learned that, in the 2022-2023 D&O/EPLI Policy, which was a renewal policy that was obtained from RSUI through Plaintiff's retail broker (McGowan at the time), a material change was made

---

[7] Dkt. 1, Complaint at ¶ 10.
[8] *Id.* at ¶¶ 11-34, 35-65.
[9] *Id.* at ¶ 94.
[10] *Id.* at ¶ 95.

to the language of Exclusion 15 by adding the bolded language below (hereinafter the "Material Change"):[11]

> SECTION IV. - EXCLUSIONS
>
> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured:
>
> ...
>
> 15. For that portion of any Claim (including but not limited to any derivative or representative class actions) made against any Insured alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, **statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment** ("Matters Excluded"); provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of Loss arising from any such Claim shall be allocated in accordance with this Policy's allocation provision. It is understood and agreed that Claims including both Employment Practices Wrongful Acts and Matters Excluded shall be allocated Claims (partially covered) and that Matters Excluded go beyond, and are not considered to be Employment Practices Wrongful Acts or acts that trigger coverage under the Policy.

*See*, Dkt. 1, Complaint/Exhibit "H," 2022-2023 D&O/EPLI Policy at pp. 8-10 of 18 (emphasis added).

RSUI cited the language of the Material Change as the grounds for denying coverage for the Subject Claims, taking the position that every aspect of the Subject Claims arise out of, are based upon or attributable to, and involve, in whole or in part, allegations that Dezhane Amey engaged in unlawful sexual relations with McMunn, then a minor, and, because of that, the Subject Claims are expressly precluded from coverage pursuant to Exclusion 15.[12]

---

[11] Dkt. 1, Complaint at ¶¶ 97-100.
[12] *Id.* at ¶¶ 85-86.

Notably, the Material Change was made by RSUI without any notice whatsoever to Plaintiff prior to the policy renewal for the 2022-2023 policy period.[13] The Material Change to Exclusion 15 was carried over to the subject 2023-2024 D&O/EPLI Policy upon renewal in 2023, again without any notice to, and unbeknownst to, Plaintiff, rendering that portion of Exclusion 15 invalid and unenforceable under Pennsylvania law (the "Notice Issue").[14] Consequently, Plaintiff raised the Notice Issue in its Complaint as an alternate theory of liability[15] should the Court rule that the language of the revised Exclusion 15 would bar coverage unless the Material Change is found to be invalid and unenforceable on other grounds.

Regarding the Notice Issue, RSUI's position is that it placed two wholesale brokers involved with the McDonald's Program, RPS and McGowan, on notice of the Material Change and that, by providing notice of the Material Change to RPS and McGowan, RSUI effectively provided notice of the Material Change to Plaintiff.[16] However, even if RSUI somehow relieved itself of its duty to notify Plaintiff of the Material Change by placing RPS and McGowan on notice of the Material Change, which is denied, neither RPS nor McGowan (or any other person or entity) ever placed Plaintiff on notice of the Material Change.[17]

Given the stance taken by RSUI that it discharged its duty to notify Plaintiff of the Material Change by placing RPS and McGowan on notice of the same, Plaintiff named RPS and

---

[13] Dkt. 1, Complaint at ¶ 100.
[14] *Id.* at ¶¶ 101-103.
[15] Plaintiff's primary position in this case is that Exclusion 15 does not apply to the Subject Claims based on a plain reading of the language of Section IV (Exclusions) of the 2023-2024 D&O/EPLI Policy (the "Policy Language Issue"). The Policy Language Issue is a question of law and Plaintiff will be filing a Motion for Partial Judgment on the Pleadings seeking a ruling that RSUI has a duty to defend Plaintiff against the Subject Claims per the terms of the 2023-2024 D&O/EPLI Policy as a matter of law.
[16] *Id.* at ¶¶ 144, 168.
[17] *Id.* at ¶¶ 100-101, 145-148, 169-171. The Court must accept as true the allegation that Plaintiff was not notified of the Material Change at this stage of the proceedings. RSUI, RPS and McGowan are expected to all confirm the truth of this allegation, and <u>none</u> of those entities has ever contended that Plaintiff was notified of the change.

McGowan as defendants in this matter on the grounds that, if it is determined that RPS (as a broker for the McDonald's Program) and McGowan (as a broker for the McDonald's Program and/or the retail broker for Plaintiff) were agents of Plaintiff, then RPS and McGowan owed certain duties to Plaintiff related to the Notice Issue that RPS and McGowan breached, causing damage to Plaintiff.

RPS has filed a Motion to Dismiss seeking dismissal of all claims raised against RPS based on two grounds.

First, RPS contends that the Court can make a ruling at this stage based on the face of the allegations in Plaintiff's Complaint, which must be taken as true, on the grounds that RPS owed Plaintiff no duty to notify Plaintiff of the Material Change as a matter of law. RPS's contention is without merit.

Pennsylvania law requires insurance companies to provide adequate notice to the insured of changes when renewing insurance policies. If an insurance company intends in the renewal of a policy to alter the terms, it must make its intention evident. *American Casualty Co. v. Resolution Trust Corp.*, 1994 U.S. Dist. LEXIS 9447, *6 1994 WL 361508, at *3 (E.D. Pa. July 6, 1994) (citing, *Schock v. Pennsylvania Township Mutual Fire Insurance Association*, 24 A.2d 741, 743 (Pa. Super. 1942). Also, the insurer will be equitably estopped from asserting an exclusionary clause in a renewal policy unless it meets its burden of proving that it both notified the insured and explained the significance of the change. *Bensalem Tp. v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311 (3d Cir. 1994).

There is no question that, under Pennsylvania law, RSUI had a duty to notify Plaintiff of the Material Change. However, as explained above, RSUI has taken the position that it somehow passed that duty onto RPS and McGowan when it placed them on notice of the

Material Change. At this early stage, the exact details of RPS's and McGowan's relationships with RSUI, and their respective roles and duties as it relates to the McDonald's Program, are still unknown because discovery has yet to be conducted. What is known, and what has been alleged, is that RSUI, RPS and McGowan were all aware of the Material Change, and that none of them (or any other person or entity) ever placed Plaintiff on notice of the Material Change.

It cannot be the case that RSUI, as the insurer, can discharge its duty to notify Plaintiff of the Material Change by placing RPS and McGowan on notice of the Material Change, and that RPS and McGowan have no duty to notify Plaintiff of the Change, which is what RPS and McGowan are asking the Court to hold as a matter of law. Rather, it must be the case that one or all of those parties had a duty to notify Plaintiff of the Material Change. Otherwise, Plaintiff, which had a right to be notified of the Change under the law, would be left with no recourse having received no such notice. If the Court is not prepared to rule at this time that RSUI could not discharge its own duty to notify Plaintiff of the Material Change as a matter of law, then RPS and McGowan must be kept in the case and Plaintiff must be permitted to conduct discovery into the issue of RPS's and McGowan's duties as it relates to the Notice Issue.

At this early juncture, Plaintiff has sufficiently pled plausible claims of professional negligence and breach of fiduciary duty against RPS that raise a reasonable expectation that discovery will reveal evidence of the necessary elements of those claims, which is all that is required of Plaintiff under the liberal notice pleading standard of Federal Rule of Civil Procedure 8.

RPS also seeks dismissal of the claims raised against it on the alternate grounds that Plaintiff's claims are barred by the economic loss doctrine. However, as explained below, the

economic loss doctrine is not applicable to Plaintiff's claims against RPS under Pennsylvania law.

For the foregoing reasons, and the reasons set forth in detail below, RPS's Motion to Dismiss must be denied.

## II. STANDARD OF REVIEW FOR RULE 12(B) MOTION

RPS is seeking to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The sufficiency of Plaintiff's Complaint must be analyzed under the liberal notice pleading standards of Federal Rule of Civil Procedure 8. The United States Court of Appeals for the Third Circuit has summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), a claimant must state a "plausible" claim for relief and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." (*Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (citation omitted)]; *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117-18, (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

## III. ARGUMENT

### A. Plaintiff Has Sufficiently Pled A Claim For Professional Negligence Against RPS

In its Motion to Dismiss seeking dismissal of Plaintiff's negligence claim, RPS is asking that the Court find, as a matter of law, that "Plaintiff's Negligence…claims against RPS should be dismissed because RPS, as a wholesale broker which had no communication with Plaintiff throughout the entire insurance procurement process, had no relationship to the Plaintiff and, accordingly, owed no duty to the Plaintiff as a matter of law." RPS's request must be denied because it is asking the Court to make a finding on issues that are fact-sensitive which the Court cannot make at this early stage without information that can only be obtained through discovery. For the purposes of a Rule 12(b) motion, Federal Rule of Civil Procedure 8 only requires notice pleading, and Plaintiff has sufficiently pled a claim for negligence under the liberal notice pleading standard of Rule 8.

To prevail in a negligence action, Plaintiff must establish the following elements: (1) the defendant owed a duty of care to the injured party; (2) the defendant breached that duty; (3) the injured party suffered actual harm; and (4) a causal relationship exists between the breach of duty and that harm. *Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019); *McFeeley v. Shah*, 226 A.3d 582, 594 (Pa. Super. 2020).

In negligence cases, a duty consists of one party's obligation to conform to a particular standard of care for the protection of another. This concept is rooted in public policy. *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005). Pennsylvania law already recognizes that insurance agents and brokers may have a duty to the insured which could possibly support a negligence claim here, and Pennsylvania law does not make a distinction between the types of brokers (retail

vs. wholesale) when it comes to a broker's duty to an insured.[18] Under Pennsylvania law, an insurance broker owes a duty of reasonable care to its customer:

> An insurance broker is under a duty to exercise the care that a reasonably prudent businessman in the brokerage field would exercise under similar circumstances and if the broker fails to exercise such care and if such care is the direct cause of loss to his customer, then he is liable for such loss unless the customer is also guilty of failure to exercise care of a reasonably prudent businessman for the protection of his property and business which contributes to the happening of such loss.

*Industrial Valley Bank & Trust Co. v. Dilks Agency*, 751 F.2d 637, 640 (3d Cir. 1985), (quoting *Consolidated Sun Ray, Inc. v. Lea*, 401 F.2d 650, 656 (3d Cir. 1968), *cert. denied* 393 U.S. 1050, 21 L. Ed. 2d 692, 89 S. Ct. 688 (1969).

Regarding the first element of the negligence claim, duty, RSUI contends that, with respect to the McDonald's Program, all of the brokers, including RPS, are agents of the McDonald's franchisees, including Plaintiff, and that, by providing notice of the Material Change to RPS, RSUI effectively provided notice of the Material Change to Plaintiff.[19] Plaintiff alleges that, if it is determined that RPS, in its role as a broker in the McDonald's Program, was an agent of Plaintiff, as RSUI contends, then, under Pennsylvania law, RPS had a duty to Plaintiff to exercise the care that a reasonably prudent businessman in the brokerage field would exercise under similar circumstances.[20] Plaintiff alleges that, if it is determined that RPS, as a broker, was an agent of Plaintiff, then RPS, once placed on notice of the Material Change by RSUI, had a duty to provide Plaintiff with adequate notice that material terms of the 2022-2023 D&O/EPLI Policy would be changing.[21]

---

[18] While it is believed and has therefore been alleged that RPS and McGowan, at the very least, are wholesale brokers, the exact details of their relationships with RSUI and each other, and their respective roles and duties as it relates to the McDonald's Program, are still unknown. In discovery, Plaintiff expects to pin down exactly what RPS's and McGowan's roles were in the insurance procurement process, which should in turn clarify what their respective duties were to Plaintiff.

[19] Dkt. 1, Complaint at ¶ 144.

[20] *Id.* at ¶ 170.

[21] *Id.* at ¶ 171.

Regarding the breach element of the negligence claim, Plaintiff alleges that RPS breached its duty by failing to directly place Plaintiff on notice of the Material Change.[22]

Regarding causation and damages, Plaintiff alleges that, because of RPS's breach of its duties, Vea Cheng of Plaintiff was not placed on notice of the Material Change and accepted the proposal for the 2022-2023 D&O/EPLI Policy, proceeding under the reasonable expectation that he was renewing the terms that Plaintiff previously had in the 2021-2022 D&O Policy.[23] It is alleged that the Material Change was carried over to the 2023-2024 D&O/EPLI Policy upon renewal in 2023, again without any notice to, and unbeknownst to, Plaintiff.[24] It is further alleged that Plaintiff has sustained damages as a result of RPS's breach of its duties because RSUI has used the language of the Material Change as the basis for denying coverage for the Subject Claims, resulting in Plaintiff sustaining damages in having to defend the Subject Claims.[25]

Based on the foregoing, Plaintiff has sufficiently pled a claim for negligence under the liberal notice pleading standard of Federal Rule of Civil Procedure 8. RPS would have this Court hold that, as a matter of law, a wholesale broker cannot be found to be an agent of an insured when the wholesale broker had no communication with the insured[26] and, further, that a

---

[22] *Id.*

[23] *Id.* at ¶ 172.

[24] *Id.* at ¶ 173.

[25] *Id.* at ¶ 174.

[26] RPS cites to case law from other jurisdictions where the wholesale broker who never had any communications with the insured was found not to be an agent of the insured. However, almost all of those cases were decided on summary judgment after the benefit of discovery, and the lack of communication was not the sole reason that the Court found no duty was owed to the insured. Notably, courts in other jurisdictions have held, at the summary judgment stage, that the lack of communication between a wholesale broker and an insured was not fatal to a finding that a wholesale broker owed a duty to an insured. *See e.g. United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488 (4th Cir. 1998) (In denying the wholesale broker's motion for summary judgment, the Fourth Circuit stated that the fact that the insureds did not communicate directly with the wholesale broker was not fatal to a finding of agency, because "what is critical is whether [the wholesale broker] knew of the [insureds] and acted on their behalf. . . ."

wholesale broker has no duty to place an insured on notice of a material change in a renewal policy. That is simply not a decision the Court can make at this early stage.

The case of *Spring Lock Scaffolding v. Aspen Specialty Ins. Co.*, 2008 U.S. Dist. LEXIS 141168 (E.D. Pa. 2008) is instructive here. In *Spring Lock Scaffolding*, the plaintiffs, Spring Lock Scaffolding, RMJP LLC, and RMJP 76th Street LLC (collectively "Spring Lock"), sued a wholesale broker, Property Risk Services, LLC ("PRS"), raising various claims, including negligence for breaching its "duty to provide Spring Lock . . . with adequate notice that material terms of the 2004-2005 policy would be changing in the 2005-2006 policy." *Spring Lock Scaffolding,* 2008 U.S. Dist. LEXIS 141168, *5. The defendant wholesale broker, PRS, filed a Rule 12 motion to dismiss arguing that Spring Lock's claim should be dismissed because PRS bore no duty to the plaintiffs given its status as a wholesale insurance broker. *Id.* at *13.

The Court in *Spring Lock Scaffolding* disagreed with PRS's position, holding:

> Here, PRS argues that plaintiffs' claim should be dismissed because PRS bore no duty to plaintiffs given its status as a wholesale insurance broker. We disagree. The complaint clearly alleges that PRS acted as Aspen's authorized agent for purposes of providing Spring Lock with preliminary documentation for both the 2004-2005 as well as 2005-2006 Aspen insurance policies. (*See* Compl. ¶¶ 17, 23, 25, 28.) "[D]iscovery is necessary when an agency relationship is alleged, thereby implicitly allowing allegations of agency to survive a facial attack." *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 Fed. Appx. 803, 808 (3d Cir. 2003) (citing *Canavan v. Beneficial Finance Corp.*, 553 F.2d 860, 865 (3d Cir. 1977) ("Because the existence of an agency relationship hinges largely on the particular facts of each case, discovery was essential to the preparation of an agency theory argument")).

---

The Fourth Circuit expressly rejected the wholesale broker's argument that it was simply acting as an intermediary between the insured and insurer.)

Relevant to our case, courts of the Third Circuit have held that allegations of an agency relationship and whether a wholesale broker has a duty to notify an insured of a material change in a renewal policy are highly fact dependent and cannot be decided on a motion to dismiss. *See, e.g., Spring Lock Scaffolding v. Aspen Specialty Ins. Co.*, 2008 U.S. Dist. LEXIS 141168 (E.D. Pa. 2008).

> The complaint further states that "PRS had a duty to provide Spring Lock . . . with adequate notice that material terms of the 2004-2005 policy would be changing in the 2005-2006 policy if, in fact, material terms were being changed," and that PRS breached its duty to do so. (*Id.* ¶ 83.) PRS argues that proper notice was given, pointing us to the Aspen Policy's Confirmation of Property Insurance form which contained an express reminder to "review the policy forms for the actual coverages provided." (PRS' Memo. at 8.) However, the Court does not find this argument sufficient to defeat plaintiffs' claims on a 12(b)(6) motion, particularly in light of the Pennsylvania Supreme Court's decision in *Tonkovic v. State Farm Mutual*. 513 Pa. 445, 521 A.2d 920 (Pa. 1987). There, it held that "[an] insurer may not unilaterally change the coverage provided without an affirmative showing that the insured *was notified of, and understood, the change, regardless of whether the insured read the policy*." *Id.* at 925 (emphasis added). *See also Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311 (3d Cir. 1994) (citing *Tonkovic* to find that the district court should have permitted discovery on plaintiff's claim that its insurance policy was modified without adequate notice.)

*Spring Lock Scaffolding*, 2008 U.S. Dist. LEXIS 141168, *13-15.

As explained above, Plaintiff has sufficiently pled a claim for negligence under the notice pleading standard of Federal Rule of Civil Procedure 8 which only requires Plaintiff to put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claim. *See, Thompson, supra,* 748 F.3d 142, 147. As the Court in *Spring Lock Scaffolding* explained, allegations of an agency relationship and whether a wholesale broker has a duty to notify an insured of a material change in a renewal policy are

highly fact dependent, and the Court should thereby permit discovery on those issues, allowing those claims to survive a motion to dismiss under Rule 12(b)(6).[27]

Therefore, RPS's request that Plaintiff's negligence claim be dismissed based on no duty owed to Plaintiff as a matter of law must be denied.

### B. Plaintiff Has Sufficiently Pled A Claim For Breach Of Fiduciary Duty Against RPS

Courts in this state have held that a fiduciary/confidential relationship does not exist in every instance between an insurance agent and his client. *See, e.g., Weisblatt v. Minnesota Mut. Life Ins. Co.,* 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998). Rather, a confidential relationship may be found to have existed based on the facts and circumstances surrounding the relationship between the parties. *Stauffer v. Stauffer,* 351 A.2d 236, 241-42 (Pa. 1976) (Whether or not a confidential relationship exists in a given case is usually a question of fact to be determined by no inflexible rule but by a weighing of the particular factors present in that case).

The Pennsylvania Supreme Court recently explained:

> Where no fiduciary duty exists as a matter of law, Pennsylvania courts have nevertheless long recognized the existence of confidential relationships in circumstances where equity compels that we do so. Our courts have found fiduciary duties in circumstances where the relative position of the parties is such that the one has the power and means to take advantage of, or exercise undue influence over, the other. The circumstances in which confidential

[27] RPS cites to *Wisniski v. Brown & Brown Ins. Co. of PA*, 906 A.2d 571, 576 (Pa. Super. 2006) in support of its position that RPS owed no duties to Plaintiff as a matter of law. RPS's reliance on *Wisniski* is misplaced for several reasons, not the least of which are: (1) the case was limited to the issue of whether insurance brokers have a duty to inspect a business property for purposes of offering flood insurance, which is not what is alleged in our case; (2) the case was decided on summary judgment after the parties submitted evidence from the defendants themselves and from an insurance professional that the defendants' conduct fell below the applicable standard of care. The *Wisniski* court not ruling on the issue until the summary judgment stage is in line with the court's decision in *Spring Lock Scaffolding, supra,* which explained that allegations of an agency relationship, and whether a wholesale broker has a duty to notify an insured of a material change in a renewal policy, are highly fact dependent, and that a court should thereby permit discovery on those issues, allowing those claims to survive a motion to dismiss under Rule 12(b)(6). As explained above, the exact details of RPS's and McGowan's relationships with RSUI, and their respective roles and duties as it relates to the McDonald's Program, are still unknown because discovery has yet to be conducted at this early stage.

> relationships have been recognized are fact specific and cannot be reduced to a particular set of facts or circumstances.

*Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820 (Pa. 2017).[28]

Here, Plaintiff alleges that a fiduciary relationship existed between RPS and Plaintiff based on the parties' special relationship through the McDonald's Program which goes beyond mere reliance on superior skill, and into a relationship characterized by overmastering influence on one side or dependence, or trust, justifiably reposed on the other side.[29]

As alleged in the Complaint, upon information and belief, RPS is RSUI's exclusive wholesale broker for the McDonald's Program, is RSUI's main contact for the McDonald's Program and is the second-level contact to handle questions from owner/operators, retail agents and McDonald's Corp that McGowan could not address and elevated matters which need RSUI's attention.[30] Plaintiff alleges that, in its special role, RPS, along with McGowan, received notice from RSUI of the changes to the policy language, including the Material Change.[31]

Under Pennsylvania law, a fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests, including a duty to disclose all relevant information. *Yenchi , supra,* 161 A.3d 811, 819-820. Here, it is alleged that RPS was placed on notice by RSUI of the Material Change and therefore had a fiduciary duty to disclose the Material Change to Plaintiff when Plaintiff renewed its D&O/EPLI Policy.[32] It is further alleged that RPS breached such duty when it failed to disclose the Material Change to Plaintiff

---

[28] In *Yenchi*, which involved a claim of breach of fiduciary duty raised by a married couple against an insurance agent, the Pennsylvania Supreme Court affirmed finding the couple did not adduce evidence to create a genuine issue of material fact as to whether a fiduciary relationship existed. Notably, however, the lower court's finding came at the summary judgment stage, only after discovery into the fiduciary duty issue had been conducted.

[29] Dkt. 1, Complaint at ¶ 176.

[30] *Id.* at ¶ 177.

[31] *Id.* at ¶ 178.

[32] *Id.* at ¶¶ 179-180.

and that Plaintiff sustained losses and damages as a result of the breach.[33] Based on the foregoing, just like its negligence claim, Plaintiff has sufficiently pled a claim for breach of fiduciary duty under the notice pleading standard of Rule 8 which only requires a Plaintiff to put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claim.

As alleged, based on the limited information provided by RSUI regarding the Notice Issue, RPS has a special role in relation to the McDonald's Program that certainly could have placed it in a position where RPS had the power and means to take advantage of, or exercise undue influence over, Plaintiff without ever having communicated directly with Plaintiff. By way of example, we know that RPS was entrusted with the information regarding the Material Change, and it may be revealed in discovery that, given its role in the McDonald's Program, there would be a benefit to RPS for withholding the information regarding the Material Change from Plaintiff and other McDonald's franchisees who were already aware of a similar case that had been filed against another McDonald's franchisee in this Court in the policy year before the Material Change was made, in which RSUI had picked up the defense of the franchisee under the old policy language. Because of that, Plaintiff is entitled to the benefit of discovery into the nuances of the relationships between RPS, RSUI and McGowan, contractual or otherwise, as part of the McDonald's program, which would provide the Court with the factual record that it needs to make a ruling on the fiduciary duty issue.

Therefore, RPS's request that Plaintiff's breach of fiduciary duty claim be dismissed on the grounds that RPS owed Plaintiff no fiduciary duty as a matter of law must be denied.

---

[33] Dkt. 1, Complaint at ¶¶ 181-182.

## C. The Economic Loss Doctrine Is Not Applicable To Plaintiff's Claims Against RPS

RPS argues that Plaintiff's claims for negligence and breach of fiduciary duty against RPS must be dismissed based on the economic loss doctrine because Plaintiff is claiming only economic damages arising from RPS's alleged breach of duty. RPS's reliance on the economic loss doctrine as a means to bar Plaintiff's claims is misplaced as the economic loss doctrine is wholly inapplicable to Plaintiff's claims against RPS.

In the recent case of *Value Drug Co. v. Only One Hub, Inc.*, 2024 U.S. Dist. LEXIS 117884, 2024 WL 3293615 (W.D. Pa. July 3, 2024), this very Court held that, in determining whether the economic loss doctrine applies, "[t]he question…is not whether the damages are physical or economic [but], rather, the question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty plaintiff claims the defendant owed." This Court explained:

> "The Economic Loss Doctrine is intended to prohibit a plaintiff from 'recovering in tort economic losses to which [his] entitlement flows only from a contract.'" *Brock v. Thomas*, 782 F. Supp. 2d 133, 143 (E.D. Pa. 2011) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir.1995)). "[N]o cause of action exists for negligence that causes only economic loss." *Aikens v. Baltimore and Ohio R. Co.*, 348 Pa. Super. 17, 501 A.2d 277, 279 (Pa. 1985). Citing *Dittman v. UPMC*, 649 Pa. 496, 196 A.3d 1036 (Pa. 2018), VDC retorts that this doctrine does not apply. *Dittman* focus on this Court's decisions in *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 866 A.2d 270 (Pa. 2005) and *Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania*, 604 Pa. 50, 985 A.2d 840 (Pa. 2009). It used the "reasoned approach rule."
>
>> [The] application of the 'economic loss' rule maintains the dividing line between tort and contract while recognizing the realities of modern tort law. Purely 'economic loss' may be recoverable under a variety of tort theories. The question, thus, is not whether the damages are physical or economic. Rather, the question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty plaintiff claims the defendant owed. A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach

> of duty arising independently of any contract duties between the parties, however, may support a tort action.

> *Dittman*, 196 A.3d at 1052. After consideration of previous caselaw, the *Dittman* Court held "that those cases do not stand for the proposition that the economic loss doctrine, as applied in Pennsylvania, precludes all negligence claims seeking solely economic damages." *Id.* at 1054. Instead, the Court's analysis "turns on the determination of the source of the duty plaintiff claims the defendant owed." *Id.* ((citation omitted) quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding Inc.*, 320 S.C. 49, 463 S.E.2d 85, 88 (S.C. 1995). "Specifically, if the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." *Id.*

*Value Drug Co. v. Only One Hub, Inc.*, 2024 U.S. Dist. LEXIS 117884, at *13-19.[34]

Here, based on the face of the Complaint, it is apparent that the source of RPS's duties as it relates to Plaintiff's negligence and breach of fiduciary duty claims against RPS do not arise out of a contract between the parties, as it has not been alleged that there was a contractual relationship between RPS and Plaintiff. Rather, the source of RPS's duties arise out of RPS's duties owed to Plaintiff as an insurance broker in the insurance procurement process, i.e., its obligation to conform to a particular standard of care for the protection of Plaintiff, which is a legal duty rooted in public policy that arises independently of contractual duties between the parties. Therefore, the economic loss doctrine does not apply to Plaintiff's negligence and breach of fiduciary claims against RPS.

Alternatively, even if the Court were to rule that the economic loss doctrine would apply to Plaintiff's claims absent one of the exceptions to the doctrine applying, Plaintiff's claims against RPS are for professional negligence, and a number of jurisdictions, including this one, recognize professional negligence as an exception to the economic loss doctrine. *See*, *Sherman*

---

[34] In *Value Drug Co.*, the Court found that the defendant owed a duty to the plaintiff to conduct business in a transparent and honest manner, and that this fiduciary duty was independent of the terms of the contract between the two, meaning that the economic loss doctrine did not apply. *Value Drug Co.*, 2024 U.S. Dist. LEXIS 117884, *18.

*v. John Brown Ins. Agency, Inc.*, 38 F. Supp. 3d 658 (W.D. Pa. 2014) (professional negligence exception to economic loss doctrine applied to negligence claim against insurance broker).

In *Sherman,* the plaintiff hired the defendants as insurance brokers to procure liability insurance for his contracting business. *Sherman*, 38 F. Supp. 3d 658, 660. The defendant insurance brokers allegedly submitted an inaccurate insurance application on the plaintiff's behalf and failed to procure adequate coverage. *Id.* at 661. The plaintiff was later sued for a workplace accident and his insurance denied coverage due to exclusions. The plaintiff sued the insurance brokers for negligence and breach of contract in procuring liability insurance to cover Sherman's building contracting operations. *Id.* The defendant brokers filed a motion to dismiss seeking to dismiss the negligence claims on the grounds that the economic loss doctrine barred the plaintiff's claims. *Id.* at 663.

The plaintiff responded that Pennsylvania law recognizes an exception to the economic loss doctrine for professional negligence claims and that Pennsylvania courts have characterized claims against insurance brokers as professional negligence claims. *Id.* The *Sherman* court agreed, finding it persuasive the fact that Pennsylvania law holds brokers to a standard of care that requires them to exercise the skill and knowledge normally possessed by members of their profession. *Id.* at 664.

The *Sherman* court explained:

> Plaintiff relies on more recent cases to support the existence of a professional standard of care for insurance brokers and agents. In a 2003 case, the Pennsylvania Appellate court held an insurance agent "is required to exercise the skill and knowledge normally possessed by members of that profession to make sure that the coverage sought by the insured is the coverage received." *Pressley v. Travelers Prop. Cas. Corp.*, 2003 PA Super 58, 817 A.2d 1131, 1134-35 (Pa. Super. 2003). The Pressley Court found that the broker was negligent and therefore "liable for any loss of coverage" under Restatement (Second) of Torts § 299A, ("Undertaking in Profession or Trade"). Furthermore, both the Western District and Eastern District of

> Pennsylvania have recognized this standard of care for insurance brokers. *See Stern Family Real Estate P'ship v. Pharms. Mut. Ins. Co.*, No. 06-130, 2007 U.S. Dist. LEXIS 22296, 2007 WL 951603, at *4 n.11 (W.D. Pa. Mar. 27, 2007); *Chetty Holdings, Inc. v. NorthMarq Capital, LLC*, No. 11-4640, 2013 U.S. Dist. LEXIS 57023, 2013 WL 1721733, at *7 (E.D. Pa. Apr. 22, 2013) (insurance agents are among a group of professionals "subject to a duty as licenses professionals pursuant to Section 299A.")
>
> With respect to Pa. R. Civ. P. 1042, Plaintiff asserts that Rule 1042 does not speak to Plaintiff's ability to bring a professional negligence claim in accordance with Restatement of Torts § 299 A, but rather that it only imposes the requirement of obtaining a certificate of merit when bringing a professional liability claim against one of the professionals listed under the rule. Thus, insurance brokers or agents not being listed under Rule 1042 is not dispositive of Plaintiff's ability to bring a professional negligence claim against Defendants.
>
> We agree with Plaintiff's argument that Pa. R. Civ. P. 1042 does not preclude the assertion of a professional negligence claim against insurance brokers. In addition, we find it significant that under Pennsylvania law insurance brokers are held to a standard of care which requires them to "exercise the skill and knowledge normally possessed by members of that profession" and failure to do so renders them "liable for any loss of coverage." *Pressley*, 817 A.2d at 1138.

*Sherman*, 38 F. Supp. 3d 658, 664.

In holding that the economic loss doctrine did not bar the plaintiff's claims against the defendant insurance brokers, the *Sherman* court held:

> In this case, Plaintiff's allegations of negligence focus on whether Defendants exercised the standard of care required for their profession by, among other things, submitting an inaccurate application, procuring insurance without a Pennsylvania license, and executing Plaintiff's signature without authorization. Indeed, Counts I, II and III do not focus on the issue of whether the insurance policy procured by Defendants conformed to what was promised in the contract between the parties. In this case, contract law does not provide sufficient protection to Plaintiff as a client of the insurance broker Defendants. Thus, we find that Plaintiff's alleged negligence claims are claims for professional negligence and fall within the exception to the Economic Loss Doctrine. Therefore, Plaintiff's negligence claims are not barred by the Economic Loss Doctrine.

*Sherman*, 38 F. Supp. 3d 658, 665.

As explained above, pursuant to this Honorable Court's decision in *Value Drug Co.*, *supra*, the economic loss doctrine is inapplicable to Plaintiff's claims because the claims against RPS are for breach of duties arising independently of any contract duties between the parties.

However, even if the Court were to rule that the economic loss doctrine would apply absent one of the exceptions to the doctrine applying, Plaintiff has raised professional negligence claims against RPS and its claims are therefore not barred because, as expressed by this Court in *Sherman*, *supra*, Pennsylvania law recognizes an exception to the economic loss doctrine for professional negligence claims, including professional negligence claims against insurance brokers such as RPS.

## IV. CONCLUSION

For the reasons set forth above, RPS's motion seeking dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted must be denied.

Respectfully submitted,

By:______________________________

Alan T. Silko, Esquire
Pa. I.D. #46837
ASilko@Silkolaw.com
Robert C. Bechtell Jr., Esquire
Pa. I.D. #208014
RBechtell@Silkolaw.com
SILKO & ASSOCIATES, P.C.
80 Emerson Lane
Suite 1305
Bridgeville, PA 15017
412-914-0144 (office)
*ATTORNEYS FOR PLAINTIFF*