**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

STAR K.E., LLC,             )
                        )
           Plaintiff,       )
                        )     No. 2:25-cv-01317
           v.             )
                        )     Chief Judge Cathy Bissoon
RSUI INDEMNITY COMPANY, et al.,  )
                        )
          Defendants.    )

**MEMORANDUM AND ORDER**

**I.      MEMORANDUM**

For the reasons that follow, Plaintiff Star K.E., LLC's Motion for Partial Judgment on the Pleadings (Doc. 31) will be denied, Defendant RSUI Indemnity Co.'s Cross-Motion for Judgment on the Pleadings (Doc. 34) will be denied, Defendant Risk Placement Services, Inc.'s Motion to Dismiss (Doc. 28) will be granted and Defendant McGowan & Company, Inc.'s Motion to Dismiss (Doc. 22) will be granted.  Also, the so-styled Joint Motion to Intervene as a Plaintiff Pursuant to Federal Rule of Civil Procedure 24 (Doc. 38) (the "Joint Motion") will be denied without prejudice to renewal.

**A.  Factual and Procedural Background**

At all times relevant to this lawsuit, Star K.E., LLC ("Star") was the owner-operator of a franchised McDonald's restaurant in Delmont, Pennsylvania.  Comp. ¶ 9.  Star brings this action against its insurer carrier, Defendant RSUI Indemnity Co. ("RSUI"), for denying a claim pursuant to a 2023 Directors and Officers ("D&O") liability policy (the "2023 Policy"), which included employment practices liability insurance coverage.  Star also complains of conduct by the retail and wholesale insurance brokerages—McGowan & Company, Inc. ("McGowan") and Risk placement Services, Inc. ("Risk Placement" and, together with McGowan, the "Broker

Defendants"), respectively—associated with RSUI's sale of D&O policies to McDonald's franchise owners.

       *i.    Claims Against RSUI*

In the lead-up to this litigation, Star's former employee, K.M., who began work at the Delmont McDonald's as a 15-year-old minor, named Star as a defendant in three employment practices actions. Comp. ¶¶ 10, 12, 41. K.M., by and through her parent and guardian, sued Star in state court, filing a one-count negligence lawsuit in the Court of Common Pleas of Westmoreland County, Pennsylvania, under case number 1935 of 2024 (the "State Action" or "SA"). Id. ¶ 10; SA Comp. (Doc. 1-1) at 16-17. She also filed a discrimination charge with the Equal Employment Opportunity Commission, Comp. ¶ 78, and brought an action in this Court, assigned docket number 2:25-cv-00152 (the "Federal Action" or "FA" and, together with the State Action, the "Actions"), asserting Title VII claims for sex discrimination, retaliation and hostile work environment as well as corresponding Pennsylvania Human Relations Act claims, FA Comp. (Doc. 1-1) at 29-36.

The Actions arose from circumstances surrounding alleged sexual harassment of K.M. by her supervisor and then-coworker, Dezhane Amey, who was training to be general manager of Star's Delmont McDonald's. Comp. ¶¶ 12-33, 36-62. In addition to Amey's misconduct, K.M. alleged that Star, *inter alia*, failed to conduct a background check adequate to identify Amey's pre-employment criminal history; failed to train K.M. on identifying and reporting harassment; failed to take corrective action after reports of Amey's harassment; and required K.M. to continue working with Amey while he harassed her. Id. ¶ 47-48; SA Comp. at 6, 9, 11, 12 16, 17; FA Comp. at 24, 26, 27. As concluded in the State Action complaint, "[t]hese circumstances[,] which McDonald's allows through its complacency[,] caused the injuries and damages to [K.M.] . . . ." SA Comp. at 6.

Upon receiving the State Action complaint, Star submitted it to RSUI for insurance coverage pursuant to the 2023 Policy.  Comp. ¶¶ 72, 73; see also SA Ltr. (Doc. 1-1) at 79-84. Over a series of correspondence, RSUI repeatedly denied coverage of the claim arising from the Actions, refusing to provide Star a defense. Comp. ¶¶ 75, 79, 83, 84, 86.  The principal stated basis for RSUI's denial of coverage was paragraph 15 in Section IV ("Exclusion IV.15") of the 2023 Policy, which provided that

> [t]he **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:
>
> . . .
>
> 15.  For that portion of any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment ("Matters Excluded"); provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision. It is understood and agreed that **Claims** including both **Employment Practices Wrongful Acts** and Matters Excluded shall be allocated **Claims** (partially covered) and that Matters Excluded go beyond, and are not considered to be **Employment Practices Wrongful Acts** or acts that trigger coverage under the Policy.

2026 Policy (Doc. 1-1) at 68-70 (bolded typeface in original).  As RSUI's counsel represented to Star by letter when disclaiming coverage for the State Action, RSUI took the position that

> [e]very aspect of the [State Action] arises out of, is based upon or attributable to, and involves, in whole or in part, allegations that K.M., a minor, engaged in unlawful sexual relations with Amey, her general manger and supervisor, over the course of several months.  Based on the foregoing, Exclusion IV.15[] applies to preclude coverage for the [State Action] in its entirety.

SA Ltr. at 82.  This rationale was incorporated by reference into subsequent letters from RSUI's counsel denying coverage—and a defense—to Star for the Equal Employment Opportunity Commission matter and the Federal Action. See Comp. Ex. E (Doc. 1-1) at 87; FA Ltr. (Doc. 1-1) at 93.

3

In the instant proceedings, Star advances three primary theories why it contends RSUI incorrectly, and in bad faith, applied Exclusion IV.15 to deny Star coverage and a defense for the Actions.  See MJP Reply (Doc. 42) at 2.

First, Star contends that Exclusion IV.15 was inapplicable based on the totality of the language of Section IV in the 2023 Policy.  In support of this argument, Star directs the Court to a provision directly following Exclusion IV.15 stating:  "The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of the EXCLUSIONS set forth in SECTION IV."  2026 Policy at 70 (bolded typeface in original).  Per Star, this "Carve-Back" provision prevents RSUI relying upon the conduct of Amey, as an insured under the 2023 Policy, to apply Exclusion IV.15 to Star as another insured.

Second, Star argues that RSUI's denial of benefits relied upon an undisclosed material change to the language of Exclusion IV.15.  In the D&O policy that was issued to Star in 2021 (the "2021 Policy"), Exclusion IV.15 used the following language:

> The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:
>
> . . .
>
> 15.   That portion of any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape ("Matters Excluded"); provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated for indemnity and defense notwithstanding this Policy's allocation provision.  It is understood and agreed that **Claims** including both **Employment Practices Wrongful Acts** and Matters Excluded shall be allocated **Claims** (partially covered) and that Matters Excluded are not considered to be **Employment Practices Wrongful Acts** or acts that trigger coverage under the Policy.

2021 Policy (Doc. 1-1) at 105-07.  Critically, the 2021 Policy did not include the clause, later found in the 2023 Policy, treating "statutory rape, or any sexual assault or rape claim that in any

way involves any sexual harassment claim or allegations of sexual harassment" as "Matters Excluded."  Compare id., with 2023 Policy at 70.  Because Star allegedly did not receive any notice of the expanded 2023 Policy definition of "Matters Excluded," Star argues that the 2023 Policy's definition of "Matters Excluded" is invalid and unenforceable under Pennsylvania law. Comp. ¶¶ 100, 102, 103.  In other words, "[b]ased on the face of the Complaints filed in the [Actions], all of the claims raised against Star[] are **Employment Practices Claims**[1] alleging **Employment Practices Wrongful Acts**[2] which trigger coverage . . . ."  Id. ¶ 106 (bolded typeface in original).  Because RSUI's denial of coverage relied upon allegedly unenforceable language transforming otherwise "Employment Practices Wrongful Acts" into "Matters Excluded," Star argues that the coverage denial is invalid and without a reasonable basis.  Id. ¶ 104.

Third, and finally, Star alleges that Pennsylvania's "doctrine of reasonable expectations" applies to vitiate RSUI's denial of coverage relating to the Actions.  Comp. ¶¶ 115-119.

RSUI answered the Complaint.  See Doc. 26.  Star now seeks partial judgment on the pleadings with respect to the meaning of Exclusion IV.15 in the 2023 Policy, i.e., the first of the three issues discussed above, arguing that it unambiguously does not preclude coverage for the claim arising from the Action.  RSUI opposed Star's partial motion for judgment on the pleadings, and cross moved for judgment on the pleadings in RSUI's favor.

---

[1] "**Employment Practices Claim** means any **Claim** alleging an **Employment Practices Wrongful Act**."  2023 Policy at 64 (bolded typeface in original).

[2] In relevant part, "**Employment Practices Wrongful Act** means any actual or alleged: . . .  2. Employment related harassment (including but not limited to sexual harassment) . . . ."  2023 Policy at 64 (bolded typeface in original).

*ii.    Claims Against the Broker Defendants*

McGowan and Risk Placement are named as defendants in this lawsuit solely in connection with the allegation that Star was not notified of the changes to the definition of "Matters Excluded" in Exclusion IV.15.  MJP Reply at 2 n.5.  In 2022, when the altered "Matters Excluded" definition was added to RSUI's D&O policy language, Star had selected McGowan as its retail insurance broker for that policy year.  Comp. ¶ 67.  Risk Placement was RSUI's exclusive wholesale insurance broker for offering D&O policies to McDonald's franchisees.  Id. ¶¶ 68, 166.  Star alleges that RSUI had informed the Broker Defendants about the now-pertinent changes to the "Matters Excluded" definition, but the Broker Defendants did not pass that information along to Star.  Id. ¶¶ 143, 167.  Star's negligence and breach of fiduciary duty causes of action against the Broker Defendants (Count IV through VII) seek damages for that alleged lapse.  The Broker Defendants now move to dismiss these counts against them.

*iii.    Motion to Intervene*

After Star commenced this lawsuit, it settled with K.M to resolve the Actions.  Joint Mot. (Doc. 38) ¶ 8.  As part of that settlement, Star assigned to K.M. some (possibly all) of its claims against RSUI being litigated in the instant case.  Id. ¶¶ 9, 15.  Star and K.M. (together, the "Joint Movants") subsequently filed the Joint Motion, seeking to allow K.M. to intervene as an additional plaintiff in this action pursuant to Federal Rule of Civil Procedure 24.  Id.  RSUI and Risk Placement opposed.  See RSUI Opp. (Doc. 41); Risk Placement Resp. (Doc. 40)

**B.  Star's Motion for Partial Summary Judgment on the Pleadings**

As RSUI brought to the Court's attention through its filing of a Notice of Supplemental Authority (Doc. 51), another judge of this court recently considered, and rejected, an argument seemingly indistinguishable from the one Star now raises.  See Coyle Props. Ltd. II, LLC v. RSUI Indem. Co., No. 3:24-cv-00098, 2026 WL 873985 (W.D. Pa., Mar. 31, 2026) (Colville, J.).

Like in the instant matter, the Coyle Properties plaintiff was a McDonald's franchisee, against which RSUI relied upon Exclusion IV.15 to deny defense to a lawsuit arising from the harassment of a McDonald's employee by a coworker.  Coyle Props., 2026 WL 873985, at *1-3. Although the Court recognizes that the Coyle Properties decision is not binding here, the Court nonetheless finds the decision highly persuasive in resolving Star's Motion for Summary Judgment on the Pleadings.

Regarding the applicability of Exclusion IV.15,

[b]y the Court's reading, this clause means that Defendant RSUI is not liable to pay for any losses related in any way to any legal claim against the insured to the extent that the claim involves . . . any sexual assault claims that involve allegations of sexual harassment.  This clearly includes the claim[] brought by [K.M], as [it] involve[d] allegations of sexual assault and harassment.

Id. at 7.

Like in Coyle Properties,

[a]s the Court sees it, [the "Carve-Back"] provision does not function as a carve-back of [Exclusion IV.15] for purposes of the instant matter.  The claim[] against Plaintiff[] do[es] not require that Mr. [Amey's] acts be imputed to Plaintiff[]. Rather, the claim[] assert[s] separate wrongful acts that arise out of, are based upon, or are attributable to, or in some way involve, in whole or in part . . . [a] sexual assault . . . claim that in some way involves a sexual harassment claim or allegations of sexual harassment.

Id.

Judgment on the pleadings "will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law."  Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005) (quoting Soc'y Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980)).  Because Exclusion IV.15 of the 2023 Policy applies given Star's own alleged wrongful acts that are "arising out of, based upon or attributable to, or in any way involving, in whole or in part" K.M.'s "sexual assault claims that involve allegations of

sexual harassment," Star has not shown that it is entitled to judgment as a matter of law, and Star's Motion for Judgment on the Pleadings will, therefore, be denied.

## C.  RSUI's Motion for Summary Judgment on the Pleadings

Although the unambiguous language of Exclusion IV.15 in the 2023 Policy dooms Star's Rule 12(c) Motion, it is not enough to warrant granting RSUI's cross-motion given Star's allegation that it never received notice of the language of Exclusion IV.15 used to deny its claim.

Under Pennsylvania law, "an insurer may not make unilateral changes to an insurance policy unless it both notifies the policyholder of the changes and ensures that the policyholder understands their significance." Bensalem Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1311 (3d Cir. 1994); accord Tonkovic v. State Farm Mut. Auto. Ins. Co., 521 A.2d 920, 925 (Pa. 1987) ("We hold that where, as here, an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy."). "The delivery of the policy as a renewal, in the absence of notice or explanation that the terms of the policy had been altered, contemplated the same terms and conditions as the existing insurance." Schock v. Penn Twp. Mut. Fire Ins. Ass'n, 24 A.2d 741, 743 (Pa. 1942). Here, Star alleges that it never received notice of RSUI's alterations to Exclusion IV.15, including the more expansive "Matters Excluded" definition used in the 2023 Policy. Comp. ¶¶ 100, 101.

Unable to argue on the pleadings that Star received notice of the changes to the "Matters Excluded" definition,[3] RSUI attempts to side-step the notice issue entirely by asserting that

---

[3] It would be improper for the Court to rule upon the apparent dispute about whether RSUI adequately complied with its obligations to provide Star notice of the changes to Exclusion IV.15, since this does not arise from the pleadings. Coyle Props., 2026 WL 873985, at *8. In any event, RSUI cites no legal authority for its seemingly novel argument that it is not liable for

coverage for Star's claim related to the Actions would have been excluded pursuant to Exclusion IV.15 even as formulated in the 2021 Policy.  RSUI Mem. (Doc. 35) at 17.  In doing so, RSUI focuses on the unchanged Exclusion IV.15's "in any way involving, in whole or in part" language.  Id. at 18.  As to whether there was a "*forcible* physical or sexual assault, battery or molestation, including rape" that Star's claim arose from, RSUI simply concludes, without any analysis of the underlying complaints in the Actions, that there were allegations against Amey for "sexual harassment, statutory rape[] and intimidation" and there was "physical or sexual assault battery or molestation, including rape, of [K.M.]"  Id.

For its part, Star maintains that "[a] plain reading of [the 2021 Policy Exclusion IV.15] reveals that [it] clearly was not meant to alleviate RSUI of its duty to provide a defense for its insureds for claims" like the one here.  MJP Reply at 16-17.  Star argues that the underlying claims were "Employment Practices Wrongful Acts," which included "sexual harassment, and were not "Matters Excluded" as defined in the 2021 Policy's Exclusion IV.15.  Id. at 17-18; see also 2021 Policy at 101.  As Star notes, the 2021 Policy draws a sharp distinction between "Employment Practices Wrongful Acts" and "Matters Excluded" for the purpose of applying Exclusion IV.15, stating:  "Matters Excluded are not considered to be **Employment Practices Wrongful Acts** or acts that trigger coverage under the Policy."  Id. at 107 (bolded typeface in original).

"Words of common usage in an insurance policy are to be construed in their natural, plain[] and ordinary sense" and the Court "may inform [its] understanding of these terms by considering their dictionary definitions."  Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735

---

damages arising out of the material changes to Exclusion IV.15 because it informed Star's retail insurance broker of the changes.  Having failed to alert the Court to any apparent grounding for this position in existing law, the Court finds RSUI's argument unconvincing on this point.

A.2d 100, 108 (Pa. 1999). "When a term is ambiguous, and the intention of the parties cannot be discerned from the policy, the court may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties[] and the circumstances surrounding the making of the contract. Ambiguous terms must be strictly construed against the insurer, but the policy language must not be tortured to create ambiguities where none exist." Sikirica, 416 F.3d at 220 (citing throughout Pac. Indem. Co. v. Linn, 766 F.2d 754, 760-61 (3d Cir. 1985)).

It is ambiguous how the 2021 Policy's language—namely, the definitions of "Matters Excluded" and "Employment Practices Wrongful Acts"—would apply to the allegations set forth in the Actions' complaints. Applying the same 2021 Policy language, the Coyle Properties court was able to conclude that the victim in that case had alleged "rape," among other things, in the underlying harassment litigation. Coyle Props., 2026 WL 873985, at *8. But consulting the language of the Actions' complaints here, the word "rape" was never used. Indeed, as alleged in the Actions' complaints, law enforcement considered Amey's conduct to be "statutory sexual assault, unlawful contact with a minor, corruption of a minor, and indecent assault of a person under 16 years of age"—all serious charges in their own right, but conduct that has all been interpreted to not necessarily implicate force.[4] SA Comp. at 13; FA Comp. at 28. The Court finds probative also RSUI's own characterization of the Actions' allegations, which RSUI failed

---

[4] See, e.g., Commonwealth v. A.W.C., 951 A.2d 1174, 1177 (Pa. Super. Ct. 2008) ("It is well-settled that, in order to convict a defendant under Section 3122.1 [statutory sexual assault], the Commonwealth need not prove the elements of consent or force."); Stiffler v. Garland, 583 F. Supp. 3d 680, 685 (W.D. Pa. 2022) ("[V]iolence, i.e. use or attempt use of force, is not an element" of Section 6318(a)(1), defining unlawful contact with a minor); Commonwealth v. Semidey, 251 A.3d 1269 (Pa. Super. Ct. 2021) (table decision) (indicating that "[b]ecause the alleged victim . . . retracted her claim that Appellant used force during the alleged episode" the charge of involuntary deviate sexual intercourse by forcible compulsion charge was dismissed while the corruption of minors charge under Section 6301(a) prevailed); Commonwealth v. Tighe, 184 A.3d 560, 584 (Pa. Super. Ct. 2018) ("[I]ndecent assault under § 3126(a)(8)," which applies when the complainant is less than 16 years of age and the perpetrator is four or more years older than the complainant, "does not require any proof of force.").

to describe as involving "force."  Instead of describing the allegations as "forcible physical or sexual assault, battery or molestation, including rape" when concluding that Exclusion IV.15 applied, RSUI instead classified them as "allegations that K.M., a minor, ***engaged in unlawful sexual relations*** with Amey, her general manager and supervisor, over the course of several months."  SA Ltr. at 82 (emphasis added).  In RSUI's subsequent Federal Action denial letter, which incorporated the initial State Action letter by reference, RSUI described the Actions as arising from "allegations that [K.M.] was subjected to ***sexual misconduct*** and involved an ***improper sexual relationship*** with her manager" and recited the entire boilerplate "Matters Excluded" provision from the 2023 Policy.  FA Ltr. at 93-94 (emphasis added).

Amey's actions clearly would constitute an "Employment Practices Wrongful Act" under the 2021 Policy. See Rice Enters., LLC. v. RSUI Indem. Co., No. 24-1880, 2025 WL 1248813, at *2 (3d Cir. Apr. 30, 2025) (holding that, for the purposes of interpreting an insurance policy, rape of a minor constituted "harassment" in the ordinary usage of that word).  In then attempting to determine whether Exclusion IV.15 applies via the "Matters Excluded" definition, the Court is cognizant that the 2021 Policy does *not* categorize all "physical or sexual assault, battery or molestation" as "Matters Excluded."  It reaches only "all *forcible*" forms of the specified misconduct.[5]  See Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 522 (3d Cir. 1999) ("[A]n interpretation which gives a reasonable, lawful[] and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful[] or of no effect." (quoting Restatement (Second) of Contracts § 203 (1981))); In re Fin. Oversight & Mgmt Bd. for P.R., 121 F.4th 280, 299 (1st Cir. 2024) ("[W]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural

---

[5] In common usage, "forcible" means "[e]ffected by force or threat of force against opposition or resistance."  *Forcible*, Black's Law Dictionary (11th ed. 2019).

construction of the language demands that the clause be read as applicable to all." (quoting

Paroline v. United States, 572 U.S. 434, 447 (2014))).

These circumstances, and this case's procedural posture,[6] prevent the Court from

concluding that, under the 2021 Policy language, the "unlawful sexual relations," as RSUI

described it, alleged in the Actions are "*forcible* physical or sexual assault, battery or

molestation" as opposed to "sexual harassment" covered by 2021 Policy as an "Employment

Practices Wrongful Act."  Drawing all reasonable inferences in favor of Star—and considering

the allegations in the Actions consistent with the alleged law enforcement assessment and

RSUI's own characterization—the parties' intention about where to draw the line between

"sexual harassment" and "forcible physical or sexual assault, battery or molestation, including

rape" is left ambiguous as applied to the Actions' allegations.  This ambiguous interaction

between a coverage provision, i.e. the "Employment Practices Wrongful Acts" definition, and an

exclusion provision, i.e. the "Matters Excluded" definition, must be construed against RSUI.

Sikirica, 416 F.3d at 220; see also Westport Ins. Co. v. Bayer, 284 F.3d 489, 498 n.7 (3d Cir.

2002) ("[C]overage clauses are interpreted broadly so as to afford the greatest possible protection

to the insured.  Exceptions to an insurer's general liability are accordingly to be interpreted

narrowly against the insurer." (alteration in original) (quoting Eichelberger v. Warner, 434 A.2d

747, 750 (Pa. Super. Ct. 1981))).

Discovery may shed additional light of the parties' intentions for the 2021 Policy

definitions of "Employment Practices Wrongful Acts" and "Matters Excluded."  But, on the

---

[6] In resolving RSUI's Motion, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party . . . ." Vitamin Energy, LLC v. Evanston Ins. Co., 22 F. 4th 386, 392 n.6 (3d Cir. 2022).

present record, RSUI has not demonstrated entitlement to judgment as a matter of law given the ambiguity of how 2021 Policy's operative terms may be applied to the allegations in the Actions.

**D.  Broker Defendants' Motions to Dismiss**

Broker Defendants both move to dismiss the negligence and breach of fiduciary duty causes of action against them.  Consistent with the Coyle Properties case, wherein the same entities similarly moved, McGowan's and Risk Placement's motions will be granted.

As to Counts IV and VI, "[t]he primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff."  Spence v. ESAB Grp., Inc., 623 F.3d 212, 217 (3d Cir. 2010) (quoting Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166, 1168 (2000)). "The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include:  (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution."  Althaus, 756 A.2d at 1169.  Courts applying these factors have concluded that "[f]or ordinary negligence purposes, the relationship between an insurance broker and client is an arm's length relationship."  Coyle Props., 2026 WL 873985, at *5 (quoting Wisniski v. Brown & Brown Ins. Co., 906 A.2d 571, 579 (Pa. Super. Ct. 2006).  Also, "[i]n the context of an insurance transaction, the insured is presumed to know what type of coverage he/it needs or wants, and an insurance broker is not under an affirmative duty . . . to advise a client regarding the extent of coverage.  Allegrino v. Conway E & S, Inc., No. 2:09-cv-01507, 2010 WL 3943939, at *8 (W.D. Pa. Oct. 6, 2010) (footnote and internal citation omitted).

Like the plaintiffs in Coyle Properties, Star failed to allege facts here showing how an agency relationship might have formed between Star and Broker Defendants.  The bare allegation that "[u]pon information and belief, [Broker Defendants] had special roles in the

process of the procurement of the above-referenced insurance policies," Comp. ¶ 71, is inadequate. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (for a motion to dismiss, the Court must "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." (citing Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009))). The Complaint is devoid of well-pleaded allegations that Broker Defendants ever undertook to explain the RSUI policies to Star; or that they were even ever in communication with Star about the policies at all.[7] Accordingly, Plaintiffs have not pleaded any non-conclusory allegations that the Broker Defendants undertook any affirmative effort to apprise Plaintiffs of anything respecting the RSUI policies, and dismissal of the negligence causes of action is appropriate. See Coyle Props., 2026 WL 873985, at *5 ("Plaintiffs have not alleged any reason for the [c]ourt to conclude that Broker Defendants undertook any duty to appraise [p]laintiffs respecting their insurance policies, and as such, no duty formed."); Allegrino, 2010 WL 3943939, at *9 (dismissing for lack of duty where "[p]laintiff has not alleged any facts which would suggest that [brokers] gratuitously undertook an obligation to recommend insurance to [p]laintiff and then negligently performed").

The breach fiduciary duty claims brought via Counts V and VII against the Broker Defendants fare no better than the negligence claims. For a fiduciary duty to be breached, there must first exist a fiduciary relationship. Marion v. Bryn Mawr Tr. Co., 288 A.3d 76, 88 (Pa. 2023) (stating elements of a breach of fiduciary duty). Indeed, "[t]his highest duty will be imposed only where the attendant conditions make it certain that a fiduciary relationship exists."

---

[7] Although McGowan is supposedly the "first-level contact to handle front-line questions" from insureds, Comp. ¶ 159, being available to answer questions is not the same as actually doing so. Nothing in the Complaint alleges that Star availed itself of this service. As the wholesale broker, Risk Placement is even further removed—it is only alleged to be the "second-level contact" for questions from insureds. Comp. ¶ 166. The Complaint similarly includes no well-pleaded allegations suggesting Risk Placement made representations to Star at any time.

Yenchi v. Ameriprise Fin., Inc., 161 A.3d 811, 820 (Pa. 2017) (footnote omitted) (collecting

cases).  "[A] business transaction may be the basis of a confidential relationship only if one party

surrenders substantial control over some portion of his affairs to the other."  Id. at 823 (quoting

In re Scott's Estate, 316 A.2d 883, 886 (Pa. 1974)).  The Complaint contains no indication that

Star ceded decision-making to Broker Defendants and, therefore, failed to allege a fiduciary

relationship that would permit Counts V and VII to survive this motion.  Coyle Props., 2026 WL

873985, at *6.

## E.  Joint Motion to Intervene

Federal Rule of Civil Procedure 24(c) explicitly requires that motions to intervene "be

accompanied by a pleading that sets out the claim or defense for which intervention is sought."

Joint Movants did not comply with this requirement.  Instead, they attached to the Joint Motion

an apparently unchanged version of the Complaint, in which all causes of action still purport to

be brought by Star.  See Joint Mot. Ex. A (Doc. 38-1).  Joint Movants then attempt to amend the

pleadings by brief.

Propriety of amendment-by-briefing aside, it remains opaque to the Court from the Joint

Movants' representations what, if any, interests in this litigation are possessed by each of the

Joint Movants respectively.  On the one hand, Joint Movants represent that "given the

assignment of claims, all of [K.M.'s] claims share common questions of law and fact with the

Coverage Action [the instant case], *as her claims are the very claims that have already been*

*raised and that will be litigated in the Coverage Action*."  Joint Mot. (Doc. 38) ¶ 18 (emphasis

added).  On the other hand, Joint Movants simultaneously define the scope of assignment as

follows:

> Star[] assigned to [K.M.] any and all legal rights, claims, causes of action, and
> contractual rights which it now has or may hereafter accrue against RSUI,
> McGowan and [Risk Placement] which have been raised, or may be raised, in the

15

pending Coverage Action.  The assignment includes all claims that Star[] has or may hereinafter accrue against RSUI for breach of the duty to defend, breach of the duty to settle[] and breach of the duty to indemnify, as well as any claims that have been made or may be made pursuant to 42 Pa. C.S.A. § 8371, ***subject to a carve-out for Star[] related to the bad faith claims***, and any and all claims that Star[] has or may hereinafter accrue against McGowan and [Risk Placement].

Id. ¶ 9 (emphasis added).

Beyond a procedural deficiency, Joint Movants' failure to comply with Rule 24(c) inhibits the Court from assessing whether Joint Movants have met their burden of satisfying the four prerequisites for intervention by right pursuant to Rule 24(a)(2).  See United States v. Territory of V.I., 748 F.3d 514, 519 (3d Cir. 2014).  In particular, and not to the exclusion of other deficiencies, by failing to define clearly K.M.'s rights relative to those retained by Star, Joint Movants have not shown that K.M.'s interests are inadequately represented by an existing party in the litigation.  "Representation will be considered inadequate on any of the following three grounds:  (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interest; (2) that there is collusion between the representative party and the opposing party[] or (3) that the representative party is not diligently prosecuting the suit."  Brody ex rel. Sugzdinis v. Spang, 957 F.2d 1108, 1123 (3d Cir. 1992) (citing Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir. 1982)).  Because the Joint Movants provide no clarity on what claims exactly were assigned to K.M., the bare conclusion in the Joint Motion that K.M.'s "interest is not adequately represented by an existing party in the litigation because [K.M.] now holds her own claims against RSUI, McGowan and [Risk Placement] in the Coverage Action, and only she can make decisions regarding the handling of her claims," Joint Mot. ¶ 15, does nothing to elucidate Joint Movants' theory of inadequate representation.

16

Because Joint Movants failed to comply with the requirements of Rule 24(c) and, relatedly, meet the burden for intervention as of right, the Joint Motion will be denied.[8]  This denial will be without prejudice to renewal through an adequately-supported motion that complies with the Federal Rules of Civil Procedure and the undersigned's Practices and Procedures.[9]

## II.    ORDER

For all the foregoing reasons, Star's Motion for Judgment on the Pleadings is **DENIED**; RSUI's Cross-Motion for Judgment on the Pleadings is **DENIED**; Risk Placement's Motion to Dismiss is **GRANTED**; McGowan's Motion to Dismiss is **GRANTED**; and the Joint Motion to Intervene is **DENIED** without prejudice to renewal through an adequately-supported motion that complies with the Federal Rules of Civil Procedure and the undersigned's Practices and Procedures.  Counts IV through VII are **DISMISSED WITHOUT PREJUDICE**.  **IT IS FURTHER ORDERED** that Star's deadline for filing an amended complaint is July 14, 2026. Star must make last, best efforts to assert viable claim(s) against Broker Defendants, because additional leave will not be granted.  Finally, if amendment is not timely-filed, Star will be deemed to stand on its current pleadings, and the dismissal of Counts IV through VII shall be converted to a dismissal with prejudice.

---

[8] Rule 24(c) applies with equal force to Joint Movants' request that permissive joinder be granted pursuant to Rule 24(b)(1)(B).

[9] Joint Movants should pay particular heed to paragraph II.C of the undersigned's Practices and Procedures, which requires that "[a]ny motion seeking substantive legal ruling(s)—whether dispositive or non-dispositive—should be accompanied by a supporting brief. . . .  A brief may be omitted only if:  (i) the motion is nondispositive, **and** (ii) the motion itself contains sufficient arguments and/or legal citation to permit meaningful judicial review."  (emphasis in original).

IT IS SO ORDERED.

June 30, 2026                                  s/Cathy Bissoon
                                               Cathy Bissoon
                                               Chief United States District Judge

cc (via ECF email notification):

    All Counsel of Record